8593

WATTS v. HERMITAGE COTTON MILLS.

1. MASTER AND SERVANT—SAFE PLACE.—Where the master places his servant under the control of another, that other is the representative of the master, and if he puts the servant to work at an unsafe place or directs him to do the work in a dangerous way, the master is liable to the servant for injury resulting therefrom.

2. IBID.—CHARGE—FELLOW SERVANTS.—The master practically received the benefit of his request covering the principle of the nonliability

of the master when the foreman and men working with him are fellow servants.

3. FELLOW SERVANTS—BURDEN OF PROOF.—Where the master sets up the defense of injury by fellow servants in suit by servant against him for damages for injury, he must prove it by the greater weight of the evidence.

Before GAGE, J., Kershaw, November, 1912.    Affirmed.

Action by L. W. Watts against Hermitage Cotton Mill. Defendant appeals on the following exceptions:

1. "That his Honor, the presiding Judge, erred in refusing to grant the motion for nonsuit on the ground 'that the alleged injuries to plaintiff were not due to any act of negligence of defendant as a proximate cause thereof.'

2. "That his Honor, the presiding Judge, erred in not granting the motion for nonsuit upon the second ground presented by the defendant-appellant, 'that if the plaintiff was injured as alleged in the complaint it was not caused by any act of the defendant.'

3. "That his Honor, the presiding Judge, erred in refusing to grant the motion for nonsuit made by the defendant-appellant upon the ground 'that if the plaintiff was injured as alleged in the complaint it was not due to any act of negligence of the defendant.'

4. "That his Honor, the presiding Judge, erred in refusing the motion of nonsuit made by the defendant-appellant upon the ground 'that if the plaintiff received the injuries complained of, they were due to the act, or acts, of a fellow servant, for which the defendant is not liable, there being no allegation in the complaint that the defendant had failed to exercise due care in the selection thereof.'

5. "That his Honor, the presiding Judge, erred in refusing the said motion for nonsuit made by the defendant-appellant upon the ground 'that if the plaintiff was injured as alleged, such injuries were due to the natural and ordinary risks of such employment.'

6. "That his Honor, the presiding Judge, erred in refusing the motion of defendant-appellant for nonsuit made upon the ground 'that if the plaintiff was injured as alleged in the complaint, it was due to his assumption of the risk which resulted in such injury.'

7. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for nonsuit made upon the ground 'that if the plaintiff was injured as alleged in the complaint, it was due to the plaintiff's own carelessness and negligence in placing and handling said box.'

8. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for a new trial upon the ground 'that under the charge of his Honor, Geo. W. Gage, the jury were instructed that in order to find a verdict for the plaintiff they must find by the preponderance of the testimony that the floor in the cotton mill of the defendant company, at the place described in the complaint, was rough, unlevel and uneven, as alleged in the said complaint, whereas, as a matter of fact, the clear and overwhelming preponderance of the testimony shows that the said floor was smooth, level and even.'

9. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for a new trial upon the ground 'that the clear and overwhelming preponderance of the testimony shows that the injury to the plaintiff was caused by the act of a fellow servant or fellow servants, or was caused by the negligence of the plaintiff himself, as a proximate cause thereof, and that in either event the plaintiff is not entitled to recover.'

10. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for a new trial upon the ground 'that the undisputed testimony and the testimony of the plaintiff himself, shows conclusively that the dangers incident to the employment in which the plaintiff was engaged at the time of the alleged injury were open, patent, such as were incident to the said employment, and

were fully known to the plaintiff when he undertook to perform the labor, and there is no scintilla of testimony to the contrary.'

11. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for a new trial upon the ground 'that there is no scintilla of testimony, showing or tending to show, that any act of the defendant company was a proximate cause of the injury, but on the contrary, the undisputed testimony shows that the injury alleged by the plaintiff, was not, and could not in any view, be considered such as could or did naturally or reasonably follow from any act of the defendant.'

12. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for a new trial upon the ground 'that the complaint alleges as the sole act of negligence an order directing plaintiff and others to place a box of a certain size, weight and shape on an unlevel, rough and uneven floor, and that the danger, if any, incident to the carrying out of said order and to the said labor, was open and patent, and from the very nature of the case was known to any man of reason, and was known to the plaintiff himself when he undertook to perform the labor, and there is no scintilla of testimony to the contrary. And the undisputed testimony shows that under the circumstances alleged in the complaint the plaintiff undertook to perform the labor, and that he and his fellow servants did perform the same in such manner as they saw fit without instruction or direction from anyone, well knowing all the circumstances, and there is no scintilla of testimony to the contrary.'

13. "That his Honor, the presiding Judge, erred in refusing the motion of the defendant-appellant for a new trial upon the ground 'that there is no scintilla of testimony showing or tending to show that the person who gave the order, alleged in the complaint as an act of negligence, was a representative of the defendant or in the employment of

the defendant company; and even if he were a servant of the defendant, the undisputed testimony shows that he was a fellow servant of the plaintiff in performing the work then in hand and then being done, and there is no scintilla of testimony showing or tending to show the contrary, and plaintiff cannot recover.'

14. "That his Honor, the presiding Judge, erred in refusing to charge the jury upon the question as to whether the foreman, H. F. Andrews, and Noland were fellow servants with the plaintiff in performing the work about which plaintiff was engaged at the time of his injury, as his Honor was requested to do by the counsel for the defendant-appellant at the close of his charge to the jury.

15. "That his Honor, the presiding Judge, erred in refusing to act upon the request of the counsel for the defendant-appellant and to charge the jury in regard to the contention of the defendant-appellant that the foreman, Andrews, as well as Noland and Tom Ballard were fellow servants with the plaintiff in performing the work in which the plaintiff was injured, and 'if they were fellow servants the jury are to find, it made no difference whether the foreman ordered him (the plaintiff) or not, the mill is not to be liable under the circumstances.'

16. "That his Honor, the presiding Judge, erred in charging the plaintiff's first request to charge: 'I charge you that if you find from the evidence, that the defendant directed the plaintiff to place the box of machinery upon its end and that this was not a reasonably safe way to place the box, and that as a result of placing the box in this manner it fell and injured the plaintiff, and you further find that the plaintiff himself was not guilty of any negligence which contributed to the injury as a proximate cause thereof without which the injury would not have occurred, then your verdict should be for the plaintiff;' in view of the fact that his Honor, the presiding Judge, refused to charge in response to defendant's request as to whether

the foreman, Andrews, as well as Noland and Tom Ballard, were fellow servants with the plaintiff in performing the work about which he was engaged when injured, the defendant respectfully submitting that while the above may be a correct statement of law in general terms, under the facts of this case the defendant was entitled to have the jury instructed upon the question as to whether the foreman, Andrews, as well as Noland and Tom Ballard, were fellow servants with the plaintiff in this particular work, and the refusal so to charge took from the jury the question as to whether an order by the said foreman was or not itself a direction by the defendant company and virtually charged them, contrary to the contention of the defendant, that the foreman and Noland were not fellow servants with the plaintiff.

17. "That his Honor, the presiding Judge, erred in charging plaintiff's third request: 'I charge you that if you should find that the plaintiff, Mr. Watts, was injured as a direct result of the order given by his superior officer, and that in giving said order such superior officer was guilty of negligence, and that Mr. Watts in performing said order was not guilty of any negligence which contributed to the injury as a proximate cause thereof without which the injury would not have happened, the plaintiff, Mr. Watts, would be entitled to recover for injuries which he has sustained;' the defendant-appellant respectfully submitting that while this may be a correct statement of the abstract principle of law, under the refusal of his Honor, the presiding Judge, at the request of defendant's counsel to charge upon the question as to whether the foreman as well as Noland and Tom Ballard were fellow servants with the plaintiff in performing the work at which he was injured, the above quoted charge took away from the consideration of the jury the question as to whether the foreman was a superior officer or fellow servant of the plaintiff, Mr. Watts, and in effect charged the jury contrary to the contention of the defendant-appel-

lant that the foreman was the superior officer of the plaintiff, and in charging the same under the circumstances it became a charge upon the facts, which were for the consideration of the jury.

18. "That his Honor, the presiding Judge, erred in charging plaintiff's fifth request to charge as follows: 'I charge you that when the law speaks of an act as contributing to an injury it means as a proximate cause thereof without which the injury could not have happened. Consequently, in this case I charge you that if you find from the evidence that Mr. Watts, the plaintiff, was injured as a direct result of the defendant's negligence in any or all of the particulars charged in the complaint, and you further find that the plaintiff was not guilty of such negligence as contributed to the injury as a proximate cause thereof, without which the injury would not have happened, then the plaintiff is entitled to recover against the defendant for such injuries as he has sustained,' the said charge completely ignoring the doctrine of fellow servant and completely ignoring the question of the assumption of risk by the plaintiff, and it is respectfully submitted that the charge should have contained as a qualification 'unless the plaintiff assumed the risk of the employment and unless the injury was the result of the act of some fellow servant engaged with the plaintiff upon the work.'

19. "It is respectfully submitted that his Honor, the presiding Judge, erred in charging the jury as follows: 'The mill contends it ought not to pay for three reasons independent of its denial of any wrong on its part. It says Watts, when he went there, assumed the risks incident to that business. * * * The next defense is that Watts was careless. * * * The third defense is, if I catch the argument of counsel, is that Watts was a fellow servant with Tom Ballard—you know who Tom Ballard is, the black man. * * * Now, if you sustain those defenses, or any of them, that ends Watts' case. But the mill has set up those

defenses, and the mill must prove them by the preponderance of the testimony; that is, the mill must satisfy you by the greater weight of the evidence that those three defenses set up are so.    If it does so, the case ends there, and you would say, "We find for the defendant;" but if the mill failed to so satisfy you, you take up the case against the mill.'    The error being, that by the said charge, his Honor, the presiding Judge, instructed the jury that the defendant-appellant must prove the defense of assumption of risk, contributory negligence and fellow servant by the preponderance of the testimony, whereas it is respectfully submitted that the defendant is not required to prove the defense of fellow servant by the preponderance of the testimony, but that it is incumbent upon the plaintiff himself in proving the case to prove by the preponderance of the testimony that the act was the act of the defendant himself and not the act of a fellow servant or of any other person."

*Messrs. M. L. Smith, W. M. Shannon* and *L. T. Mills,* for appellant, cite: *The appellant did no act of negligence that was the proximate cause of the injury:* 66 S. C. 302; 70 S. C. 470; 72 S. C. 346, 398; 91 S. C. 128; 71 S. C. 53; 93 S. C. 193; 55 S. C. 490.    *Who are fellow servants?* 80 S. C. 236; 71 S. C. 56; 76 S. C. 549; 87 S. C. 449; 81 S. C. 46; 71 S. C. 57.    *Plaintiff assumed the risk:* 80 S. C. 328; 61 S. C. 468; 81 S. C. 525; 73 S. C. 507; 21 S. C. 547; 87 S. C. 213; 72 S. C. 237; 89 S. C. 387; 93 S. C. 193; 73 S. C. 507; 85 S. C. 363; 77 S. C. 328; 55 S. C. 483; 81 S. C. 374.    *He was guilty of contributory negligence:* 80 S. C. 239; 72 S. C. 237; 89 S. C. 387; 77 S. C. 328; 58 S. C. 491; 90 S. C. 42; 86 S. C. 69.    *Difference between defense of fellow servant and assumption of risks:* 51 S. C. 95.

*Messrs. Rembert & Monteith,* contra, cite: *The Judge is not required to pass on a request not submitted in writing:*

68 S. C. 428; 76 S. C. 207; 78 S. C. 401; 76 S. C. 1; 92 S. C. 175. *Court only required to charge requests applicable to case:* 84 S. C. 202; 85 S. C. 26, 234. *Burden is on defendant to prove defense of injury by fellow servant:* 26 Cyc. 1408; 66 S. C. 482; 82 S. C. 224; 89 S. C. 387. *Andrews represented the master:* 80 S. C. 232; 76 S. C. 549; 89 S. C. 387.

June 30, 1913. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action for damages, alleged to have been sustained by the plaintiff through the negligence of the defendant.

The defendant denied the allegations of negligence, and set up the defense of contributory negligence and assumption of risk on the part of the plaintiff, and that the injury was the result of a risk, which was incident to his said employment, by which, it seems, was meant the negligence of a fellow servant.

At the close of the plaintiff's testimony, the defendant made a motion for a nonsuit, which was refused.

The jury rendered a verdict in favor of the plaintiff for one thousand dollars.

The defendant made a motion for a new trial, which was also refused.

The defendant then appealed upon numerous exceptions, which will be reported.

The first question that will be considered, is raised by the thirteenth exception.

The plaintiff testified as follows: "The date alleged in this complaint, about the 5th of December, 1910, where were you working? At the Hermitage Cotton Mills. What were you employed to do there? I was employed to help, at the time, Mr. Andrews, putting up frames.

The morning of the injury, what work were you actually engaged in that morning? Putting up skeleton

frames; I was helping them move boxes. Who did you say was there; whom did you work under? Mr. Andrews; working under Mr. Andrews at the time. Was Mr. Andrews present? Yes, sir. Now, Mr. Watts, were you injured there? Yes, sir. I wish you would tell the Court and jury how you received any injury there. Well, we were moving those boxes. Mr. Andrews had us to move the boxes from the back end. The first box had to go around the upper end of the frame and come between the wall and frame. As I passed Mr. Andrews I said, 'Where will we put this box?' He said, 'Set it up over there.' Pointed out the place to put it? Yes, sir. Who was bringing it? Us three—Nolan, Ballard and myself. Where was Mr. Andrews? Standing in the alley, opposite between them and the other frames. You went up and asked him where to put the box? Yes, sir. And he told you where to put it? Yes, sir. Did you put it where he told you? Yes, sir. And you were instructed to set it up on the end? Instructed to set it up on the end. Did you place it where he told you? Placed it where he told me. Now, coming down to the actual injury; how did that occur? After we placed the box up there, I steadied it; I was on the other side of it, and the other two turned off in about the same time I did, I reckon, I think about that time; but we steadied it good before we let it loose where it was to stand. I just turned around. As I turned around I got far enough to keep the box from catching me anywhere except right here and it knocked me down. Could this box have been laid flat down on the ground? Yes, sir, could have been."

The Court: "What you mean is on the side and not on its end? Mr. Monteith: Yes, sir.

"If it had been laid that way, would have been flat down on the floor? Yes, sir. Could it have turned over that way? No, sir. Were you or not instructed to set it up on its end? I was. And you did so? Did so; yes, sir. Was this Mr. Andrews the superintendent of the mill? He was

foreman of them frames; he was not superintendent of the
mill.   Who was superintendent of the mill?   Mr. West
was superintendent of the mill.   Who told you to work
with this man, Andrews?   Mr. West.   Told you Mr.
Andrews was there in charge of putting up the frame?
Yes, sir; he put me with Mr. Andrews that morning.   And
told you to do as Mr. Andrews told you to do?   Yes, sir."

H. F. Andrews, a witness for the defendant, testified as
follows: "Where were you at work?   The Hermitage
Mills.   What was your business there?   I came here to
put up fly frames.   Did you have anyone to assist you at
that work?   Three of the mill men.   Was Mr. Watts one
of those employed with you at the time?   Yes, sir.   Who
furnished you the hands to do this work?   The superin-
tendent, Mr. West.   Was Mr. West there while you were
doing this work any time?   He was in and out of the room.
You did that; you directed what to do and how to do it?
Yes, sir."

Redirect examination.

Mr. Mills: "Mr. Andrews, you were asked whether
there was a reason for setting the boxes on end, and you
said there was.   Why?   You set them on ends, square
them around to get them out of the way to go by with the
others and give more room.   Are you accustomed to receiv-
ing boxes of that size and setting them up?   Yes, sir.   Was
that the usual box?   Yes, sir; with that stuff in it.   It is
customary for you to have those boxes set up that way, on
end?   Yes, sir.   How many years have you been doing
that?   Thirteen years.   You have done that in one mill,
or in many mills?   Several mills.   Have you been doing
that since that time?   Yes, sir.   It is not a common thing
to set those boxes up that way?   Yes, sir.   And to receive
them as you have stated?   Yes, sir."

Mr. Blakeney: "You say for the reason to move them
out; that's the reason that you set them up on end; more
liable to fall that way than if laid down to be opened?

Yes, more apt to fall. If you had laid it down as you did when you took it off of Mr. Watts, it could not have fallen on anybody? No, sir. If you laid it down flat it would be a safer way so far as falling? Yes, sir. There was plenty of room to lay it flat? Yes, sir. That is the safest way, as far as falling on anybody? Yes, sir."

P. L. West, the superintendent of the mill, thus testified as a witness for the defendant: "Did you hire Mr. Watts? Yes, sir. What had you hired him to do? Before that, I had him to do something else. I turned him over to Mr. Andrews and Mr. Andrews gave him instructions. I just told Mr. Andrews to take those men; he could have them to assist him."

It will be thus seen that P. L. West, the superintendent of the mill, placed the plaintiff under the direction and control of H. F. Andrews, with instructions to do whatever Andrews told him to do, and that he was injured while carrying out the orders of Andrews, which rendered the situation more dangerous than if the box had been placed on its flat surface.

It was the duty of the defendant to furnish the plaintiff with a safe place to work, and also a safe method of doing the work. Under the circumstances, Andrews was the representative of the master in ordering the plaintiff to deposit the box on end; and if, in giving such directions, he was guilty of negligence, which resulted in the plaintiff's injury, the defendant would be liable, unless the plaintiff was guilty of contributory negligence, or unless the injury was the result of a risk which he assumed.

*McBrayer* v. *Chemical Co.,* 89 S. C. 387. In that case the Court said: "This case is distinguished from *Martin* v. *Royster Guano Co.,* 72 S. C. 237, 51 S. E. 680, because in that case there was no testimony that the foreman ordered Martin to work at the particular place at which he was injured, or that he ordered him to remain there and work,

after he became apprehensive of danger." This exception is overruled.

We proceed to the consideration of the fourteenth exception.

The record shows that the following took place at the close of the charge:

Mr. Smith: "Our contention is, all of these parties were fellow servants with the foreman, as well as Noland and Tom Ballard, and if they were fellow servants, the jury are to find it made no difference whether the foreman ordered him or not, the mill is not to be liable under the circumstances.

The Court: "I made my charge in response to your argument.

Mr. Smith: "We took that position this morning."

His Honor, the presiding Judge, had already charged the jury, as follows:

"If Andrews stood in the place of the master, that is, of the mill, and directed that box to be put there, and Tom put it there because Andrews, representing the mill, told him to put it there; if you conclude that is so, and that was a careless thing, a negligent thing, that a reasonably careful man would not have done that, would not have ordered a box of that character to be put at that place; if you come to that conclusion, then you conclude that the mill was negligent, and that is a matter peculiarly for you."

He also charged as follows: "The third defense is, if I catch the argument of counsel, is that Watts was a fellow servant with Tom Ballard—you know who Tom is, the black man. I do not think it will be disputed, I do not think there is any dispute about Watts and Tom being fellow servants; that is to say, they were together handling the box. If Watts came to his disaster by reason of negligence on the part of Tom, under the law the mill would not be liable, because they would be fellow servants, and when Watts went to work with Tom he assumed that risk, that

Tom would be as careful as he would be and he would be as careful as Tom."

So that even conceding there was error, it was not prejudicial, as the defendant practically received the benefit of the request.

What has already been said disposes of the fifteenth, sixteenth, seventeenth and eighteenth exceptions.

The nineteenth exception cannot be sustained, for the reason that the defendant had set up as a defense that the injury was caused by the negligence of a fellow servant.

In such cases the rule is thus stated in *Roberts* v. *Chemical Co.,* 84 S. C. 283, 66 S. E. 298: "Evidence tending to prove that the plaintiff's injury was caused solely by his own negligence, or by the negligence of a fellow servant, would have been admissible under the general denial. It was, therefore, unnecessary for defendants to set up, as an affirmative defense, that the plaintiff's injury was caused by the negligence of a fellow servant. This fault in their pleadings very naturally led the Circuit Judge into the inadvertent error of charging the jury, that the burden was upon the defendants to prove the defense, for it was set up as an affirmative defense between the other two affirmative defenses, the burden of proof of which was upon defendants. Parties ought not to be heard to complain when their own faulty pleadings misleads the Circuit Judge."

Furthermore, it was not incumbent on the plaintiff to prove that he was not injured by the negligence of a fellow servant; and the defendant could not get the benefit of such fact unless it made proof thereof, which had to be established by the preponderance of the testimony in order to produce conviction on the minds of the jurors.

All the other exceptions relate to the sufficiency of the facts to sustain the plaintiff's cause of action, or to sustain the defense of assumption of risk, contributory negligence,

or negligence of a fellow servant; and as shown by the foregoing testimony and for the reasons hereinbefore stated, cannot be sustained.

Judgment affirmed.

Mr. Justice Fraser *concurs in the result.*