12980

CROUCH v. CUDD

(155 S. E., 136)

April, 1929.

*Messrs. I. C. Blackwood* and *L. G. Southard,* for appellant,

*Messrs. R. A. Hannon* and *Nichols, Wyche & Byrnes,* for respondent,

September 30, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

This is an action for damages for personal injuries alleged to have been received by the plaintiff through the negligent acts of the defendant in his operation of an automobile.

The complaint alleges that in February, 1927, while plaintiff was crossing Chestnut Street in the City of Spartanburg, the defendant, without notice or warning of any kind, drove his automobile into her, striking her with great force and hurling her to the pavement, rendering her unconscious, and injuring her both externally and internally, etc.; and that her injuries were caused by his negligence and recklessness in the following particulars:

"(a) In that the defendant drove his automobile upon the main thoroughfares of the City of Spartanburg in a careless, reckless and indifferent manner.

"(b) In that the defendant drove his automobile upon public highways in the City of Spartanburg at a rate of speed greater than was reasonable and proper at the time and place, and without having any regard to the use of the highways, and in such a manner as to endanger the life, limb and property of the plaintiff.

"(c) In that the defendant drove his automobile upon approaching a crossing of intersecting public streets and while traversing such crossing or intersection of such streets at a rate of speed greater than was reasonable and proper, and without having any regard for the safety of pedestrians upon the same.

"(d) In that the defendant failed to have his said automobile under control upon approaching a crossing of intersecting public highways or streets in the City of Spartanburg, and while traversing the same.

"(e) In that the defendant upon approaching the plaintiff upon one of the highways, or streets, in the City of Spartanburg, without giving warning of the approach of his said automobile by signalling with a horn, bell, or otherwise.

"(f) In that the defendant, upon approaching the plaintiff, while plaintiff was walking upon the said highway, or street, failed to use every reasonable precaution to insure the safety of the plaintiff.

"(g) In that the defendant, upon approaching the plaintiff while walking upon the streets of the City of Spartan-

burg, failed to stop his said automobile in order to avoid injury to the plaintiff.

"(h) In that the defendant failed to have good and sufficient brakes upon his said automobile in order to stop the same, and thereby avoid all injury to the plaintiff.

"(i) In that the defendant failed to keep a proper lookout to observe plaintiff, or other persons, walking upon said highway or street.

"(j) In that the defendant instead of keeping a proper lookout as to where he was driving his said automobile, was looking down at the shifting gears of the same, thereby causing said automobile to run into the plaintiff as above set forth.

"(k) In that the highway upon which plaintiff was struck by the defendant's automobile is one of the main thoroughfares in the City of Spartanburg upon which a great number of persons travel, all of which was known or should have been known to the defendant; nevertheless, the defendant drove his said automobile on said highway without paying any attention to what he was doing or where he was going, thereby running his said automobile into the plaintiff as above set forth.

"(l) In that the defendant, while turning to the left into another street from East Main Street, failed to pass around the point of intersection of the two streets, thereby violating the City Ordinances of the City of Spartanburg.

"(m) In that the defendant drove his said automobile in violation of the State Statutes of the State of South Carolina."

The defendant, answering, interposed a general denial, and pleaded unavoidable accident, contributory negligence, and the payment of money by the defendant to the plaintiff constituting a release.

The case was tried before his Honor, Judge Mann, at the April, 1929, term of Court of Common Pleas for Spartanburg County. Defendant's motions for a nonsuit

and for a directed verdict were refused, and the jury found for the plaintiff $2,500 actual damages. From judgment entered on the verdict, the defendant appeals.

By his first and second exceptions, the appellant complains of error in the Court below in refusing to continue the case. It appears from the statement made by the trial Judge in overruling the motion, that a roster of cases for trial had been prepared, and that, after this roster had been followed for a time, some of the cases being tried and others, including the case at bar, being passed, counsel in some of the passed cases requested the Court to revert to them for trial, but he thought that there was sufficient work ahead for the dates fixed and decided that he would not revert to the passed cases unless the docket was thoroughly disposed of and there was nothing else to be done. Later, counsel for plaintiff called up the case at bar, stating that he understood Mr. Southard, one of counsel for defendant, desired to make a motion. Mr. Southard, who was present, indicated that he had no motion to make, as the case had been passed on the roster and the Court had stated that no one of such cases would be reverted to for trial. Counsel for plaintiff then said that, if Mr. Southard's mother was ill, as he understood she was, he would be glad to agree to a continuance, but would like to have some assurance that the case would be tried at the next, the May, term of Court. In reply Mr. Southard indicated that he did not think he could try it before the fall term. A few days later, Mr. Blackwood, of counsel for the defense, moved the Court for a continuance on the grounds that Mr. Southard's mother was very ill, that he himself was expected to be called to North Carolina at any time to engage in the trial of a case there, and that Mr. Daniel, also of counsel for the defense, had just returned from Washington and was not in physical plight to enter into trial. The Court in passing upon the matter, stated that, if Mr. Southard were the only counsel in the case, the motion for a continuance would be granted, but,

as there were other able counsel associated with him, no good reason was made apparent why the case should not be tried.

"The fundamental principle running throughout the subject of continuances is that the granting or refusal of a continuance rests in the discretion of the Court to which the application is made, and that its ruling in reference thereto will not be disturbed by an appellate tribunal unless an abuse of discretion is shown. This is because the lower Court is apprised of the circumstances of the case and the previous proceedings, and is therefore in a better position to decide on the propriety of granting the application than the appellate Court." 6 R. C. L., 544. See, also, *Carolina Timber Company v. Holden,* 90 S. C., 470, 73 S. E.; 869; *State v. Kenny,* 77 S. C., 240, 57. S. E., 859.

Under the facts and circumstances disclosed, there was no abuse of discretion on the part of the trial Judge in refusing the continuance asked for. Further, the appellant suffered no harm. The record shows that all his counsel were present and participated in the trial, defending with vigor and ability.

When Dr. Hunter, a witness for the defense, was on the stand, counsel for plaintiff asked him this question: "Is it a fact that William Osler, the authority on arthritis, says that it can be and often is caused by trauma?" to which the witness replied, "Yes, sir."

The defendant objected to the testimony on the ground that it was hearsay and not within the exceptions to the rule provided for by statute. The Court overruled the objection, and the defendant excepts.

While it appears that the admission of the testimony was error, it was harmless. There was abundant evidence, exclusive of that complained of, to establish the fact that arthritis can be and often is caused by trauma; and, while all of the witnesses who testified on that point said that it might be due to other causes, none. of them denied that it might be caused in some manner by trauma, or injury. The exception, therefore, is overruled.

Dr. Warfield, physician at Converse College, testified that when Miss Crouch, the plaintiff, first matriculated at Converse (time not stated by the witness) she asked to be excused from gymnasium work because of a recent operation. On direct examination of the witness, the following occurred:

"Q. Doctor, state whether or not at that time you diagnosed Miss Crouch as highly nervous? (Objection.)

"The Court: Yes."

The appellant complains that it was prejudicial error not to allow Dr. Warfield to answer the question. If there was error, it did no harm, for the reason that the fact that the plaintiff was very nervous prior to the accident was established by the undisputed testimony of her own witnesses.

By his fifth exception, the appellant complains that the Court committed error in holding, as a matter of law, that Chestnut and East Main were intersecting streets.

Chestnut street joins and unites with East Main Street at right angles on the south, but does not cross it. Section 10 of the traffic ordinance of the City of Spartanburg provides that "all vehicles turning to the left into another street shall pass around the point of intersection of the two streets." It is undisputed that the appellant, immediately before the accident, drove his car from East Main to Chestnut Street, turning into the latter on his left-hand side. He contends that there can be no intersection of two streets unless they cross each other, that for this reason there is no intersection of Chestnut and East Main, and therefore the ordinance in question was not applicable.

While the word "intersect," as ordinarily used, may carry with it the idea of "crossing" as suggested by the appellant, it is evident, when we consider the purpose of the ordinance, that the city council intended no such restricted meaning. The regulations were made to promote the safety of pedestrians and others, and to prevent confusion and accidents,

which are as likely to occur where one street joins or unites with another, as in the present case, as where two streets cross each other. It was clearly the intention of the makers of the ordinance that the word should be given its broader meaning, and the Circuit Judge was correct in holding as he did. See *Manly v. Abernathy*, 167 N. C., 220, 83 S. E., 343, 345; *Buckey v. White*, 137 Md., 124, 111 A., 777.

Complaint is also made that the trial Judge erred in failing and refusing to charge the jury that the following ordinance of the city was mandatory, and that a person violating it was guilty of negligence *per se:* "Streets are primarily intended for vehicles, but drivers must exercise all possible care not to injure pedestrians. Pedestrians should avoid interference with traffic, and to this end should not step from the sidewalk without first looking to see what is approaching; should cross the street at a right angle, preferably at a regular crossing at the end of a block, and where a traffic policeman is stationed; should wait for his signal, and should stand on the sidewalk or close to the track when waiting for a car; should face the front part of a car when alighting from it, and observe the traffic on the right before moving to the sidewalk; or, if crossing behind the car, should observe the traffic in both directions."

The Court held that this language was somewhat ambiguous, and left it to the jury to say whether the ordinance was mandatory or suggestive. An examination of it convinces us that, as a matter of law, with respect to pedestrians, it is merely suggestive; and that, by the submission of the question to the jury, the appellant obtained more than he was entitled to, and should not now be heard to complain.

At the close of plaintiff's testimony, the defendant made a motion for a nonsuit on the ground "that the only reasonable inference which the testimony will support is, that any injury suffered by the plaintiff was the result of her own negligence, combining and concurring with any on the part of the defendant as a proximate cause of the alleged injury." At the close of all the testimony, de-

fendant also made a motion for a directed verdict on the same ground. The Court overruled the motions, and the defendant urges with great earnestness that he erred in so doing.

In passing upon these motions the trial Court was bound to consider the evidence most favorably to the plaintiff. East Main Street of the City of Spartanburg runs east and west; Oakland Avenue unites with it on its north side, while Chestnut street joins it on the south, a short distance west of Oakland Avenue. It is undisputed that, on the day of the accident, the defendant drove his automobile out of Oakland Avenue, diagonally across East Main, into Chestnut, turning to his left into that street. The plaintiff, in the meantime, was walking along the sidewalk on the west side of Chestnut Street, going from Kennedy Street toward East Main, and, on reaching a point some fifty or sixty feet from where Chestnut enters East Main, she left the sidewalk and started across Chestnut Street, near the center of which she was struck by defendant's automobile, knocked down, and injured. She testified that on leaving the sidewalk she looked to her left toward East Main, the direction from which a car would be expected to come on that side of Chestnut, but saw no car; that, after reaching the center of Chestnut, she looked to her right toward Kennedy, the direction from which a car would be expected to come on that side of Chestnut; that, when she was struck, she had proceeded beyond the center of Chestnut Street, the defendant's car being on the wrong side of that street, and that she had no reason to expect a car to come from the direction of East Main at that point; that she was carrying over her a red silk parasol, but was not holding it in such way as to obscure her vision. Mr. Barnett, a witness for the plaintiff, testified that he saw the accident; that the plaintiff was near the center of the street when she was struck by the automobile; that the defendant turned into Chestnut Street to his left fairly close to the curb and started to cross the street diagonally; that

at the time of the accident, the right-hand wheel of his car was near the center of the street, but that the rear wheels were on the left. There was testimony to the effect that immediately after the accident the defendant stated to the mother of the plaintiff that "he was entirely to blame, he was having trouble with his car and he was not looking." The appellant himself admitted that he gave no signal upon entering Chestnut Street; that he turned into that street on his left-hand side; and that he did not see the respondent until he was within a few feet of her, although at the time she was near the center of the street.

Under the testimony adduced the Court could not say, as a matter of law, that the plaintiff was guilty of contributory negligence as a proximate cause of her injuries, and properly submitted that question to the jury. The defendant, by his own admission, was guilty of negligence *per se* through failure to obey the city ordinances. At the time of the accident the plaintiff was where she had no right to be; that is, she had a right to cross the street at that point, if she so desired, exercising, of course, due care for her own safety. The defendant, the driver of a highly dangerous machine, was bound to use such care as the situation or circumstances demanded. As stated in the *Manly case, supra,* a driver of such machine, "when turning at the angle of two intersecting streets or roads, should strictly obey the law and exercise that degree of care generally which is commensurate with the great hazard produced by failure to do so."

It appears that the plaintiff introduced in evidence certain x-ray photographs for the purpose of showing the diseased condition of her spine, which, she contended, was caused by the accident. Thereafter, counsel for defendant requested the Court's permission to take the plates to the office of Dr. Sheridan for examination by Dr. Ringer, one of their witnesses, stating that on account of the lights they could be better examined there. The plaintiff objected.

The trial Judge refused the request, for the reason, as stated by him, that he thought the exhibits should remain in the physical possession of the Court, and that it did not appear that Dr. Ringer needed to familiarize himself with them, and that the question was premature at that time. The defendant contends that there was error in refusing to permit the examination.

The matter was entirely in the discretion of the Court, and we see no abuse of its discretion. In addition, when Dr. Ringer was later on the stand he stated that he had already seen the pictures and testified with regard to their significance.

By exceptions 11 and 12 the appellant imputes error to the trial Judge in instructing the jury that Chestnut and East Main were intersecting streets and that under the ordinance of the city a person driving from East Main into Chestnut was required to clear the center of the latter street by keeping to the right of such center, and one failing to do so would be guilty of negligence *per se*. There was no error here. What we have already said with regard to this ordinance disposes of these exceptions.

The Court also charged: "And if she has shown you that she was injured, but on the other hand, if Mr. Cudd, by his testimony on his side, by the truth of the case on his side, if he has shown that by the greater weight of the evidence, if he has made the scales break in his favor and shows you that it was an accident that caused the injury, why in that case she could not recover."

The appellant contends that this was error, placing upon him a "burden greater than that required by law; that the plaintiff not only had to show an injury, but that she had to show that it was not an accident."

The defendant, as we have already stated, after interposing a general denial, pleaded unavoidable accident as one of his affirmative defenses. As evidence of unavoidable accident was admissible under his general denial, this plea

was wholly unnecessary; and if the defendant by such plea led the trial Judge to inadvertently charge the jury that the burden was upon him to prove the defense, he should not now be heard to complain. *Roberts v. Chemical Company,* 84 S. C., 283, 66 S. E., 298. Moreover, it was not incumbent upon the plaintiff, as contended, to show that her injuries were not the result of accident, it being necessary only for her to prove, by the greater weight of the evidence, the material allegations of her complaint. *Watts v. Cotton Mills,* 95 S. C., 138, 78 S. E., 798.

It appears, however, that the appellant, in connection with the charge complained of, further contends that, even if his plea of unavoidable accident be taken as an affirmative defense, which the defendant must prove by the preponderance of the evidence, still the trial Judge committed error, in that he instructed the jury, in effect, that, "upon the mere proof of an injury to the plaintiff, the burden then shifted to the defendant to negative the charges of negligence which had not been proven and to take the burden upon himself to prove that it was an accident." As to this position, it is only necessary to say that, if there was error as contended, it was harmless, in view of the charge as a whole, for the jury was repeatedly told, in other parts of the charge, that, before the plaintiff could recover, she must prove, by the greater weight of the evidence, that she was injured, and that she sustained her injuries through defendant's negligence, as alleged in the complaint, as the proximate cause thereof. This exception is overruled.

The appellant further complains of the following instruction of the Court: "So, if you find that Mr. Cudd was negligent, and Miss Crouch was negligent, don't get it into your head it is a question of weighing one negligence against the other; it is not a question of preponderance and so far as weight is concerned but it is a question of which negligence was closest to it, most effective, the closest cause producing the injury complained of. Maybe

I could make that a little plainer by giving you an illustration. * * * You see, it is a case of nearness to taking part in the producing of the injury."

The objection is that it made no difference as to nearness or otherwise, if the plaintiff's negligence concurred in any degree with and combined with the negligence of the defendant as a proximate cause of the injury. If there was error, it is seen to be harmless when the charge is considered as a whole. Near the close of his charge the Court, at the request of counsel for the defendant, instructed the jury that, "if her (the plaintiff's) negligence combined and concurred with the negligence of the defendant in any degree whatsoever, that would defeat a recovery."

Lastly, the appellant complains that the Court erred in taking his defense of release from the jury.

It appears from the record that, after the accident, the defendant made several gifts to the plaintiff in the way of candy, etc., and paid her tuition at Converse College for one term, but there was no evidence that it was the intention of the parties that these gifts or the paying of the tuition should operate as a release, or that there was any such understanding. The defendant himself testified that he did not think anything was said about a release. Under this state of facts, the Court correctly instructed the jury that they should not consider this defense.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES COTHRAN and BLEASE and MR. ACTING ASSOCIATE JUSTICE SMITH concur.

MR. JUSTICE CARTER (dissenting) : Under the showing made I think the trial Judge should have granted a continuance when requested by defendant's counsel. I therefore dissent. I express no opinion as to the other questions raised by the appeal.