## SUBURBAN TRANSIT CORPORATION v. MALONE.

### No. 5493.

Circuit Court of Appeals, Fourth Circuit.

July 23, 1946.

Douglas McKay and David W. Robinson, both of Columbia, S. C. (J. Monroe

Fulmer, of Columbia, S. C., on the brief), for appellant.

Henry H. Edens, of Columbia, S. C., for appellee.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

SOPER, Circuit Judge.

This suit for personal injuries was brought in the District Court by Beatrice Malone who lost a leg as the result of an accident at a street intersection in Columbia, South Carolina on January 26, 1945 when she was knocked down and run over by a passenger bus of the Suburban Transit Company. The case was submitted to a jury which found a verdict for the plaintiff in the sum of $33,125. The principal questions on this appeal are: (1) Whether there was sufficient evidence of negligence on the defendant's part to take the case to the jury; and (2) whether the evidence of contributory negligence on the part of the plaintiff was so clear and convincing that a verdict against her should have been directed.

The intersection of Main Street, which runs north and south, with Taylor Street, which runs east and west, is a busy corner in a shopping district of Columbia, and many persons were on the streets in this vicinity about 6 P.M. on the day when the accident occurred. Just before it happened the bus was standing on the south side of Taylor Street, west of Main Street, alongside and to the north of another passenger bus which was parked next to the curb. The bus involved in the injury was waiting for the green traffic light so that it might round the corner and turn south into Main Street and proceed upon its accustomed route. At the same time the plaintiff was also waiting with other pedestrians for the green light as she stood near the curb on the sidewalk at the southwest corner of the intersection. As she stood in this position the bus was some 12' to her left and 15' behind her. She had been shopping and carried packages including a small radio in her hands. After the light changed to green the bus started and swung around the corner and the plaintiff started across and was nearing the safety zone in the center of Main Street when she was knocked down by the bus. The rear right wheel of the bus passed over her leg crushing it so badly that amputation was necessary.

In general, the contention on the part of the plaintiff is that she waited for the green light and then crossed the street carefully, and was suddenly struck by the bus approaching from the rear and from her left; and the contention of the defendant is that the bus driver was turning the bus slowly into Main Street, looking out for pedestrians crossing the street at the same time, when the plaintiff hurried across, looking only to her right and heedlessly collided with the side of the bus at a point to the rear of the front door.

There was evidence to support both versions of the accident. Main Street is 70' wide from curb to curb and the bus was 24'2" long and 7'10" wide; so that in making the turn it necessarily reached or came close to the center of Main Street and blocked the passage of pedestrians desiring to cross. The city ordinance (§ 19 of Chap. 28, Revised Ordinances of Columbia) gave pedestrians the right of way and hence the driver of the bus was under especial duty, even when proceeding under a green light, to look out for persons crossing the street. Such persons, although preferred by the ordinance, were not relieved of the duty of exercising ordinary care for their own safety. Sims v. Eleazer, 116 S.C. 41, 106 S.E. 854, 24 A.L.R. 1293; Wright v. South Carolina Power Co., 205 S.C. 327, 31 S.E.2d 904; Porter v. Cook, 196 S.C. 433, 13 S.E.2d 486; Holcombe v. W. N. Watson Supply Co., 171 S.C. 110, 171 S.E. 604; Crouch v. Cudd, 158 S.C. 1, 155 S.E. 136.

According to witnesses for the plaintiff, the bus, while making a sweeping turn, struck the plaintiff while she was in the pedestrian lane some distance from the west curb of Main Street and in or near the safety zone in the center of the street. She was struck by the front part or corner of the bus on the right side and knocked in a southerly and westerly direction. The bus then travelled 40' before it was stopped. The plaintiff said that she waited till the light turned to green and started across,

inside the pedestrian lane, looking to see if cars were coming; that other people were in front of her; that just before she reached the safety zone she was hit on the left temple by the bus which was still making the turn; and that she then saw the bus for the first time but she could not see the driver because passengers were standing in the front part of the bus. Blood stains were found in the bed of the street 23′ from the west curb and 14½′ south of the center of the pedestrian lane.

The evidence on the part of the defendant showed that the bus was going slowly in making a wide sweeping turn around the corner. The driver had had ten weeks' experience without an accident in the service of the company. As he was making the turn, two persons approaching on his left stopped in the safety zone and no one was coming from his right. He accelerated the bus and was going between seven and ten miles per hour and the front part of the bus had passed the pedestrian lane when he heard a scream behind him on the right side and felt a small bump, and stopped the bus as soon as possible. Certain passengers in the bus on the right side saw some one leave the west curb, looking south, and later heard a scream and got the impression that the wheels had run over some one. No one was standing in the bus. Other witnesses gave testimony tending to show that the plaintiff left the curb hurriedly a short time after the lights changed and after the bus had begun to turn and without looking walked into the side of the bus behind the front door when the front part of the bus was passing the pedestrian lane. After the accident a small dent was noticed in the side of the bus to the rear of the front door.

■ From this outline it seems obvious that both of the principal questions in the case were properly submitted to the jury. The driver was performing a maneuver which required great care on his part since the streets were thronged with people and some of them were waiting, as he was, for the signal, and obviously intended to cross the street in the very pathway of the bus. Since they had the right of way it was his positive duty, even though he had the green light, to see that the way was clear before he crossed the pedestrian lane. If then it is true, as some of the testimony indicates, that the plaintiff was proceeding carefully across the street when the bus came upon her suddenly from the rear and struck her down, the inference is permissible that the driver, intent upon making the turn, and looking out for persons approaching on his left hand, swung the bus into Main Street too quickly under the circumstances without giving sufficient attention to persons who were crossing the street from west to east on his right hand and were not so close to the driver's seat.

The opposing testimony that the plaintiff was looking to her right as she hurriedly crossed the street and negligently walked into the side of the bus after the front of the bus had crossed her path would have justified a finding that the plaintiff failed to exercise reasonable care in crossing the street and was guilty of such contributory negligence as would have justified a verdict for the defendant; but it seems to us that in respect to contributory negligence as well as the negligence of the defendant, the conflicting accounts of the occurrence raised issues of fact which only the jury had the authority to decide.

■ Objections are now made by the appellant to certain questions and remarks of the District Judge during the examination of the witnesses and to certain portions of the judge's charge. We have examined the record and find the objections to be without merit. No objection was made to any of these incidents when they occurred during the examination of the witnesses; and no exceptions were taken by counsel on either side to the judge's charge, although they were invited to do so after it had been concluded.

■ We find no substantial basis for the exception taken by the defendant during the examination of the doctor who attended the plaintiff, when he was permitted, over the objection of the defendant, to testify as to the fee which he intended to charge in case the plaintiff recovered a verdict in the pending case. The objection arose when the doctor was asked what was a reasonable charge for the services

he had rendered and he replied that he had never charged a soldier since the war began and would send in no bill if the soldier-husband of the plaintiff would have to pay it. The defendant objected on the ground that if there was no charge, the evidence was not competent, and the judge sustained the objection. It was then brought out that the doctor expected to be compensated if the wife was able to pay the bill out of any funds she might collect in the law suit. Under these circumstances the doctor was permitted to testify that a fee of $1500 was a reasonable charge. We find no error in this ruling. It is true that the evidence disclosed that the doctor would not be paid unless the jury decided in favor of the plaintiff, but the testimony came out in the ordinary course of the trial as the result of the first objection of the defendant's counsel to any estimate of the value of the services. Furthermore, we cannot assume that the jury would have rendered a verdict for the plaintiff merely for the purpose of compensating the doctor for the substantial services that he had rendered.

The appellant also contends that the judge erred in refusing a motion for a new trial based on the ground that the verdict of $33,125 was excessive. The plaintiff was a woman 32 years of age. She had been able to earn about $100 per month as waitress, sales girl or receptionist. As the result of the accident she was totally and permanently disabled, in the opinion of the attending physician, from industrial employment or household work except such as she might be able to perform while sitting down. Her life expectancy was approximately 34 years. She was rendered incapable of bearing a child in the normal manner; her leg was so completely crushed and broken from the ankle to the rim of the pelvis that it had to be amputated in the high mid thigh, making it improbable that she will be able to wear an artificial limb; the pelvis was crushed in many places; flesh was denuded from both buttocks. She suffered severely for a long time and the wounds were not completely healed at the time of the trial which occurred nearly eleven months after the accident. Her actual ex-

penses exceeded the sum of $5,000. Under these circumstances we cannot say that the judge in deciding the question abused the discretion lodged in him under the established rule.

Affirmed.