12242

CHANDLER v. PEOPLE'S NATIONAL BANK

(138 S. E., 888)

1. APPEAL AND ERROR—EXCLUSION OF TESTIMONY WILL NOT WARRANT REVERSAL, UNLESS RECORD SHOWS WHAT REJECTED TESTIMONY WOULD

HAVE BEEN.—The Supreme Court should not reverse a cause of action for failure to admit testimony, unless the record on appeal shows fairly what the rejected testimony would have been.

2. APPEAL AND ERROR—RECORD HELD TO SUFFICIENTLY SET FORTH TESTIMONY, EXCLUSION OF WHICH WAS RELIED ON FOR REVERSAL.— Record on appeal in real estate broker's action for commission *held* to sufficiently set forth testimony, rejection of which was asserted as ground for reversal.

3. TRIAL—EVIDENCE EXCLUSION OF WHICH IS RELIED ON FOR REVERSAL FOR SAKE OF RECORD, SHOULD BE HEARD IN ABSENCE OF JURY, THOUGH MATTER IS LARGELY WITHIN DISCRETION OF TRIAL JUDGE. —In order that record may properly show testimony, exclusion of which is relied on for reversal, such testimony should be heard at trial in absence of jury, but in view of additional time required for such procedure, matter is largely within discretion of trial Judge.

4. EVIDENCE—IN BROKER'S ACTION FOR COMMISSION, WHERE DEFENDANT'S PRESIDENT DENIED CONTRACT BUT ADMITTED MAKING SIMILAR ARRANGEMENT WITH VARIOUS BROKERS, TESTIMONY OF OFFERS MADE OTHERS WAS PROPERLY EXCLUDED.—In real estate broker's action for commission, where defendant's president testified that he never employed plaintiff as broker, but offered plaintiff and several other real estate brokers to sell property to them (severally) at a named price, and to allow a deduction of 2 1-2 per cent., it was reversible error for Court to exclude testimony of other real estate brokers as to nature of offer made to them.

5. BROKERS—IN BROKER'S ACTION ON ALLEGED EXPRESS CONTRACT, EXCLUSION OF EVIDENCE TO SHOW THAT COMMISSION PROVIDED FOR WAS REASONABLE HELD NOT ERROR.—In real estate broker's action for commission, involving only question whether there was a contract to pay commission of 2 1-2 per cent., exclusion of testimony to show that commission of 2 1-2 per cent. was reasonable compensation *held* not error.

Before ANSEL, J., County Court, Greenville. Reversed. and cause remanded for new trial.

Action by W. A. Chandler against the People's National Bank of Greenville, S. C., as executrix of the estate of C. F. Dill, deceased. Judgment for defendant, and plaintiff appeals.

*Messrs. J. M. Richardson* and *W. B. McGowan,* for appellant, cite: *Admissibility of evidence of other contracts*

*related to contract at bar:* Wigmore on Ev., Vol. I, 454; 130 S. C., 280; 136 S. C., 389. *Testimony as to reasonableness of commission offered to show that special contract as alleged was reasonable, and, therefore, probably correct; error to exclude such testimony:* 87 S. C., 85; 130 S. C., 285. *When broker regarded as efficient and procuring cause and entitled to commissions:* 80 S. C., 46; 94 S. C., 199. *Cases distinguished:* 72 S. C., 355; 137 S. C., 224.

*Mr. E. M. Blythe,* for respondent, cites: *Admissibility of other transactions related to present transaction:* 130 S. C., 280; 136 S. C., 389; 59 S. C., 581; 73 S. C., 48; 116 S. C., 221; 72 S. C., 355; 137 S. C., 224; 109 S. C., 29; 122 S. C., 179. *Evidence as to reasonable value of service properly excluded:* 133 S. C., 217. *Cases distinguished:* 87 S. C., 85; 16 S. C., 231. *Improper to order new trial where from examination of record it appears that verdict would have been the same before any fair jury, even if no error had been committed:* 93 S. C., 420, 426.

August 2, 1927.

The opinion of the Court was delivered by MR. JUSTICE BLEASE.

This suit was tried in the County Court of Greenville County, with Hon. M. F. Ansel, County Judge, presiding, and resulted in a verdict for the defendant. The plaintiff seeks here a new trial.

The action was on an alleged parol contract, to which there was no witness save the plaintiff and the president of the defendant bank. The allegations of the complaint, necessary for an understanding of the issues in this Court, are to the following effect: The defendant bank, of which W. C. Beacham is president, is the executor of the will of C. F. Dill, deceased. The estate owned the "Skelton building," in the City of Greenville. The executor had power, under the will, to sell land convey the real estate. Plaintiff is a real estate broker, and defendant engaged him to sell

the real estate mentioned at the price of $70,000.00, upon the agreement that plaintiff was to receive 2½ per cent. of the sale price as commissions for his services. The building was sold at the price stated, but defendant declined to pay the commissions.

The defendant's answer, except as to formal matters, was a general denial.

The presiding Judge refused defendant's motion for a nonsuit and for a directed verdict. In a brief, but clear, charge, which correctly stated the law of the case, he submitted to the jury the only two issues in the cause, which, in our language, were as follows: (1) Was there a contract, as alleged by the plaintiff, between the parties? (2) Was the plaintiff, as broker, during the continuance of his agency, the efficient or procuring cause of the sale made by the defendant to the purchaser? There is no appeal from the charge.

The main controversy in the case was the question whether the plaintiff's version of the contract was true, that he was employed as a broker to sell the property to some third party for $70,000.00 and should receive a commission of 2½ per cent. for his services, or whether Beacham's version of it was true, that the property was offered to the plaintiff, as a purchaser, at $70,000.00, and that if he bought he would be allowed a discount, or "allowance," as it was termed by Beacham, of 2½ per cent. The plaintiff testified positively to his version, and what is quite material to the present inquiry, that when he opened negotiations with Beacham, the latter stated to him that he had listed the property with several other brokers upon exacly the same terms as he proposed and agreed to list it with the plaintiff: $70,000.00, one-fourth cash, balance on easy terms, and 2½ per cent. commissions to the broker making the sale.

Beacham testified, with equal positiveness, that he had never engaged the plaintiff as broker to sell the property, but made the same arrangement with him that he had made with

several other real estate brokers, that he would sell the property to them (severally) at $70,000.00, and allow a deduction of 2½ per cent. The testimony pertinent to the present inquiry is that he had made the same contract with the other brokers as he made with the plaintiff.

It thus appears, we think without controversy, that the contract with the plaintiff, whatever it was, is conceded to have been in the identical terms of the contracts made severally with the other real estate brokers with whom Beacham listed the property, and the question is whether the testimony of these other real estate brokers as to what were the terms of their contracts with Beacham has any probative value in determining the vital issues in the case as to what were the terms of the contract between the plaintiff and Beacham.

The exceptions of the appellant, only two in number, charge error in the exclusion of testimony offered by him in presenting his case in chief.

The first exception relates to proffered testimony on the part of two witnesses, Mr. A. H. Pyron and Mr. W. T. Henderson. When Mr. Pyron, a real estate broker, was on the stand, he was asked for plaintiff if Mr. Beacham offered the Skelton building for sale through him. There was objection on the part of the defendant on the ground that even if defendant employed other real estate men, or made other contracts regarding the sale of the property, the testimony of the witness was irrelevant. During the course of argument as to the propriety of the question asked, the attorney for the plaintiff made this statement: "We can prove he had made similar contracts." The defendant's attorney urged that the plaintiff was confined to the allegations of his complaint as to the employment of the plaintiff by the defendant, and that no testimony as to other or similar contracts was competent. The presiding Judge indicated that he would rule in favor of the defendant. Plaintiff's attorney then stated that he would

ask another question to get it in the record. That question was this: "Did Mr. Beacham or any other officer offer you a commission of 2½ per cent. if you sold this Skelton building?" There was objection on the grounds already made, and on the further ground that the question was leading. The Court stated that the question could be put in the alternative, but sustained the objection.

Following the offer of the testimony by Mr. Pyron, plaintiff called Mr. Henderson, also a real estate broker, as a witness. Plaintiff's counsel stated this witness was called for the purpose of being asked the same questions he had propounded to Mr. Pyron. Defendant's attorney objected on the same grounds made by him formerly. The Court ruled the questions improper.

The appellant's attorneys insist here that the testimony should have been allowed. At the outset, we are confronted with the position of the respondent that, even if there was error in declining to allow the witnesses to answer the questions put to them, there can be no reversal, because the record before this Court does not show what the testimony of the witnesses would have been. Two cases, *Roach v. Williams,* 109 S. C., 29; 95 S. E., 120; and *Bowling v. Mangum,* 122 S. C., 179; 115 S. E., 212, are cited as authority for the proposition advanced.

The holding in the *Roach case,* referred to by respondent, where the opinion was written by Mr. Justice Fraser, was this:

"The appellants have made an error of practice in that they failed to state in the case what they expected to prove by the excluded evidence. It appears only in the argument. This Court can make no finding based upon what appears in argument and not in the case."

In the *Bowling case,* the language of Mr. Justice Cothran, who wrote the opinion of the Court, was as follows:

"The exception must be overruled upon the further ground that the record does not show what the testimony would have been."

We agree with the principle of practice that this Court should not reverse a cause for failure to admit testimony, unless the record on appeal to this Court shows fairly what the rejected testimony would have been. We think, however, that the transcript of record in the case at bar sufficiently sets forth the testimony the plaintiff expected from the witnesses, Pyron and Henderson. The witnesses could not have answered the questions propounded to them, after the ruling of the Court that they were improper, without subjecting themselves to the penalties of contempt. One of the plaintiff's counsel, during the examination of Mr. Pyron, made a statement to the Court, as shown before, of what he expected to prove by this witness. A little later, while yielding to the ruling of the Judge, he asked another question, as stated by him to be for the purpose of getting it into the record. When Mr. Henderson was called, plaintiff's counsel, in a very proper manner, without endeavoring to be too insistent, and without any intention of unduly prolonging the trial, stated to the Court that the witness was produced for the purpose of asking him the same questions that had been formerly propounded to Mr. Pyron. Upon this statement, defendant's counsel entered his same objection, and the Court entered his same rulings.

We think perhaps the better practice in matters of this kind is for the jury to retire and for the examination of the witness to be had, so that the exact testimony desired to be introduced may appear in the record of the trial and be presented to this Court, in case of appeal. This procedure, however, takes time, and will result very often in extending the length of trials. These matters must be left very much, at all times, to the discretion of the trial Judge. It seems to us it should be entirely sufficient, how-

ever, for the purpose of passing upon the relevancy of testimony offered and disallowed, for the Court to have in the record of trial the statement of a member of the bar in good standing, as to what he proposed to prove by the witness, made at the time of his presentation of that witness. Accordingly, we find ourselves unable to agree with the position of the respondent.

We concede that if there had been no connection in the testimony between the contract made with the plaintiff and the contracts made with the other brokers, the terms of these other contracts could not possibly have thrown any light upon the question at issue as to what was the contract between the plaintiff and Beacham; the testimony would have been evidence falling within the inhibition of the rule *res inter alios acta.*"

As is said in the second appeal in the case of *Carter v. American Fruit Growers,* 136 S. C., 389; 134 S. E., 292:

"The testimony of witnesses, received over the objection of the defendant, to the effect that sales were being made in the vicinity f. o. b. the cars there, for cash and not consignment, was clearly inadmissible, as *res inter alios acta,* and exceedingly hurtful to the defendant in the mind of the average jury. It was entirely irrelevant to the issue of a consignment or sale, and its admission was reversible error. If a hundred men had made sales for cash, it was no reason or evidence why the plaintiff had not made a consignment."

But where, as here, there appears a direct and close connection between the several contracts, established by the testimony of both the plaintiff and Beacham, we think that the situation is radically different.

We think that the point is clearly demonstrated in the first appeal of the *Carter case,* 130 S. C., 280; 125 S. E., 641. There, the contest was whether certain shipments were made on consignment or under a contract of straight sale. The Court held that account sales covering other shipments, tending to show shipments on consignment and

not on sale, were admissible, in view of the evidence that the plaintiff received the account sales without objection, accepted the proceeds, and testified that all shipments had been made on the same basis, the turning point in the issue.

In a contest between a buyer and a seller, as to the terms of a verbal contract, whether it was made for cash or on credit, and it appeared by the admissions of both parties that the seller had stated to the buyer that he should have the same terms as had been given to A, B, and C, could there be any question that A, B, and C should be allowed to sustain the buyer's contention that the sale had been on credit? In the absence of such a connection, as a matter of course, the testimony would not be received.

In *Spenceley v. Wilmot,* 7 East, 108, it was held:

"Whatever contracts the witness might have entered into with other persons for other loans, they could not be evidence of the contract made with the defendant unless the witness had first said that he had made the same contract with the defendant as he had made with those persons."

In *Kinston v. Rock Me Co.,* 154 N. C., 462; 70 S. E., 910, it was held (quoting syllabus):

"In an action for the breach of a contract for the purchase of yarns, where the defense was that the yarns delivered were of inferior quality, and the president of the plaintiff company testified that the same yarn was delivered to the defendant as to other customers, and that there were no complaints, letters written by other customers of the plaintiff, complaining of the quality of the yarn, were admissible in evidence."

In *Glucose Co. v. Flinn,* 184 Ill., 123; 56 N. E., 400, it was held (quoting syllabus):

"A contractor suing for work done and men furnished in making frequent repairs in defendant's different factories, and claiming that the work had been ordered by its general superintendent, who had agreed to pay him at the

same rate he had been paid by the corporation formerly owning one of such factories, was entitled to introduce a bill previously paid him by defendant for like services rendered in one of such factories at such rate, since it tended to show a recognition of the prices charged."

In *Gardner v. Crenshaw,* 122 Mo., 79; 27 S. W., 612, it was held (quoting syllabus) :

"Evidence of a prior contract with another person may be admissible upon an issue as to a contract with a different person, where the later contract refers to the terms of the former."

· In *Hewes v. Germain Co.,* 106 Cal., 441; 39 P., 853, it was held (quoting syllabus) :

"In an action for a breach of the purchaser's contract to accept grapes when delivered, a contract between plaintiff and a third person, specifying the weight of the boxes and the grapes to be made in packing, to which reference is made by the contract in suit, is admissible in evidence."

If the witnesses had been allowed to testify to agreements with Beacham, identical with that which the plaintiff contends was made with him, in view of the conceded position that the contracts were all identical in terms, we cannot see why the testimony would not have been of probative force.

It has been suggested, in an effort to differentiate the case at bar from the first appeal in the *Carter case,* that in the *Carter case* all of the transactions were between the same parties, while in the case at bar the transactions were between different parties. So far as the admissibility of the testimony is concerned, it should make no difference whether the transactions were between Beacham and other parties or between Beacham and the plaintiff upon other occasions, so long as a connection is shown between them.

The respondent has cited several cases as sustaining the inadmissibility of the testimony. We refer, briefly, to the holdings in those cases, as we understand them to have

been. *Burwell v. Chapman,* 59 S. C., 581; 38 S. E., 222. It was there held that upon the issue of failure of goods sold to come up to representation, evidence that like goods sold to others were not as represented was irrelevant, clearly not meeting the peculiar circumstances of the case at bar. *Burns v. Goddard,* 72 S. C., 355; 51 S. E., 915. It was held that "it would have been too discursive to inquire as to the terms of agreements made by plaintiff with others." That case contains no element of connection between the several transactions. The testimony offered was clearly inadmissible. *Buist v. Mercantile Co.,* 73 S. C., 48; 52 S. E., 789, contains no suggestion of a connection between the transactions. *International Co. v. Hammett,* 116 S. C., 221; 107 S. E., 917, is subject to the same observation. *Colt v. Robinson,* 137 S. C., 224; 135 S. E., 312. In that case the Court says:

"No connection or relationship between these transactions and the transaction alleged to have taken place between the plaintiff and the defendant was shown, and this testimony was clearly inadmissible."

Exception 1, which alleged error in refusal to admit the testimony referred to, is sustained.

The presiding Judge would not allow the plaintiff to offer the testimony of a witness to show that a commission of 2½ per cent. for the sale of the Skelton building was a reasonable compensation for a broker's services. The ruling of the Court is made the basis of the second exception. Appellant cites as authority the *Carter case* (first appeal), *supra,* and the case of *Edwards & Walter v. Enterprise Bank,* 87 S. C., 84; 68 S. E., 961. We have already referred to the holding in the *Carter case;* we do not regard it applicable to this exception. In the *Edwards case,* the action was on a special contract for professional services by architects, and on allegations that such services were reasonably worth the amount claimed. The

answer raised an issue on these points, and alleged that the price for the services was to be made satisfactory to the defendant.    It was held by this Court that evidence as to what the services of the plaintiffs were reasonably worth was admissible.    The pleadings in the *Edward case* were not at all like the pleadings in the case at bar.    There is nothing in the pleadings here on the part of either the plaintiff or the defendant to make an issue as to a *quantum meruit*.

This statement is made in the *Edwards case:*

"The general rule is that under a complaint based upon a special contract, plaintiff cannot recover upon a *quantum meruit*."

The cases of *Fitzsimmons v. Guanahani Co.,* 16 S. C., 192, and *Birlant v. Cleckly,* 48 S. C., 306; 26 S. E., 600, were referred to as authorities for the proposition.    There was no issue here on the question of the reasonableness of the commissions claimed by the plaintiff.    There being no such issue, it was not error for the Court to refuse to admit testimony regarding that matter; and the second exception is overruled.

Pursuant to the rule, the respondent gave proper notice that this Court would be asked to sustain the judgment in favor of the defendant upon the grounds:  (1) That the County Judge should have granted the respondent's motion for a nonsuit; and  (2) that respondent's motion for a directed verdict in its favor should have been granted. The ground upon which each of these motions was based was the same, namely, that there was no evidence tending to show that appellant was the procuring and efficient cause of the sale of the land by the respondent.    Because of our conclusion that the judgment below should be reversed and a new trial had of the cause, we do not think it proper to indicate any impression we may have as to the force and effect of the evidence adduced at the trial.    In referring heretofore to the evidence, we have stated it with the sole

purpose of passing upon the legal questions before this Court and it has not been and is not now, our purpose to indicate in any way our appraisal of the evidence offered by either of the parties. We think it sufficient, at this time, to only announce our holding as to the position taken by the respondent, which is that under the law and the evidence which was presented by the plaintiff the presiding Judge committed no error in submitting the case to the jury for determination.

The judgment of this Court is that the judgment below be, and the same is hereby, reversed, and that the cause be remanded to the County Court of Greenville County for a new trial.

MR. CHIEF JUSTICE WATTS, MESSRS. JUSTICES COTHRAN and STABLER, and MR. ACTING ASSOCIATE JUSTICE R. O. PURDY concur.

MR. JUSTICE CARTER did not participate.