17095

F. R. CULLUM, d/b/a CULLUM MOTOR SALES, Appellant, *v.* DUN & BRADSTREET, INC., Respondent

(90 S. E. (2d) 370)

*A. R. McElhaney, Esq.,* of Greenwood, *for Appellant,*

386

*Messrs. Mays, Featherstone & Bradford,* of Greenwood, *for Respondent,*

December 6, 1955.

LEGGE, Justice.

Appellant, a dealer in used automobiles, brought this action for damages in the court of common pleas for Greenwood County, alleging that on March 9, 1953, respondent had maliciously libelled him by composing and publishing in writing concerning him a false and defamatory report in the following words: "Owes heavily on the purchase price. Owes Ouzts $8,000.00 on business." He alleged that the quoted language meant that he owed a large amount of money on the purchase price of his business, and further owed one Clinton R. Ouzts, of Greenwood, $8,000.00 on his business. As elements of damage resulting from such publication, he alleged injury to his reputation and credit, humiliation, embarrassment, mental anguish, and loss of profits. In its answer, respondent alleged, in addition to a general denial, that it was engaged in business as a mercantile agency, furnishing to its subscribers confidential information concerning the credit and estimated financial condition of individuals, firms and corporations engaged in business; that the information concerning appellant had been received from sources reasonably believed to be reliable, and had been furnished by respondent in the regular course of its business, in good faith, in the belief that it was true, without malice, and only to those of respondent's subscribers who had made inquiry regarding appellant; and that the information or report concerning appellant so furnished by respondent was qualifiedly privileged, and was furnished upon a qualified privileged occasion. The answer further alleged that immediately upon being advised by appellant that the report of March 9, 1953, was incorrect, respondent had, through its representative, interviewed appellant and had promptly corrected the error by an interim report issued March 12, 1953, and a further report of March 13, 1953.

At the conclusion of all of the testimony, the trial judge directed a verdict in respondent's favor, upon the ground that the testimony admitted of no reasonable inference other than that the communication in question was published on

a qualifiedly privileged occasion, and that there was no evidence of malice.

It is undisputed that respondent is a mercantile agency as alleged in its answer, and that the report of March 9, 1953, concerning appellant's financial condition was made only to Stephenson Finance Company, a subscriber to respondent's service, in response to inquiry made pursuant to its contract with respondent. The report had also been mailed to another subscriber, Standard Oil Company, at Columbia, S. C., which had about the same time requested credit information concerning appellant; but it is uncontradicted that, immediately upon being advised that the report was erroneous, respondent's agent at Columbia so informed this subscriber and thereupon the envelope containing the report so mailed was "picked up" by respondent's agent, having never been opened.

A communication on a subject in which the person communicating has an interest, or in reference to which he has a duty, is qualifiedly privileged if made in good faith, limited in its scope to the requirements of such interest or duty, and made to a person having a corresponding interest or duty. *Fitchette v. Sumter Hardwood Co.,* 145 S. C. 53, 142 S. E. 828; *Bell v. Bank of Abbeville,* 208 S. C. 490, 38 S. E. (2d) 641; *Fulton v. Atlantic Coast Line R. Co.,* 220 S. C. 287, 67 S. E. (2d) 425.

A communication thus qualifiedly privileged is not actionable, even though it contain a charge of crime, unless malice in fact be shown. As was said in *Bell v. Bank of Abbeville, supra* [208 S. C. 490, 38 S. E. (2d) 643]:

"Ordinarily, proof of a defamatory publication, charging another with the commission of a crime, makes out a *prima facie* case of malice in the author. But a privileged communication is an exception to the rule. In such case the presumption of malice is rebutted. The effect is to cast upon the plaintiff the necessity of showing malice in fact—that is, that the defendant was actuated by ill will in what he did and

said, with the design to causelessly and wantonly injure the plaintiff."

Since qualified privilege arises by reason of the occasion of the communication, a communication which goes beyond the requirement of the occasion loses the protection of the privilege, for it lacks the requisite element of good faith. When the protection of the privilege has been thus lost, the communication falls within the rule, applicable to unprivileged communications, that the defamatory language, in itself, may warrant the inference of malice. *Fitchette v. Sumter Hardwood Co., supra; Duncan v. Record Pub. Co.*, 145 S. C. 196, 143 S. E. 31; *Bell v. Bank of Abbeville*, 211 S. C. 167, 44 S. E. (2d) 328; *Pelot v. Davison-Paxon Co.*, 218 S. C. 189, 62 S. E. (2d) 95.

While there are some decisions to the contrary, the rule supported by the weight of authority and, we think, by the sounder reasoning, is that the defense of qualified privilege is available to a mercantile agency in respect of reports on the credit and financial standing of an individual or business concern communicated confidentially, and in good faith, to a subscriber having an interest in the particular matter. 53 C. J. S., Libel and Slander, § 119, p. 196; 36 Am. Jur., Mercantile Agencies, Section 11, page 184.

The occasion of the report made by respondent to its subscriber Stephenson Finance Company concerning appellant's financial condition being thus, under the undisputed evidence, a qualifiedly privileged one, there remains for consideration the question of whether there was any evidence from which a jury might reasonably infer malice, and consequent loss of the protective privilege.

It appears from the evidence that the report of March 9 was made as the result of information supplied respondent by a resident of Greenwood who since the summer of 1952 had been respondent's part-time representative, or "fee correspondent", there. In passing, we note that the record shows

that at the time of the trial he was unable, because of illness, to testify. It was uncontradicted that prior to his engagement as such, respondent's supervisor had personally investigated the qualifications of this correspondent and had approved him as a reliable person whose reports could be depended upon. Also uncontradicted is the testimony of respondent's supervisor that this correspondent had, prior to the report in question, made for respondent more than three hundred reports, none of which had given rise to any complaint. Appellant sought to prove that respondent had been guilty of gross negligence in its selection of said correspondent because of the fact that between November, 1937, and April, 1951, he had on numerous occasions forfeited bond in the Greenwood Municipal Police Court on charges of drunkenness, which fact appellant claims respondent should have discovered in the course of its investigation prior to his employment. But in the light of the fact that at the time of his being investigated this man had had no police court record of drunkenness for more than a year, the failure of respondent to have discovered his previous record in that regard was insufficient, of itself, to warrant the inference of negligence on the part of respondent so gross as to amount to malice, in employing him.

Nor does the record reveal any other evidence upon which malice on the part of the respondent might reasonably have been predicated. No ill-will existed between appellant and respondent's fee-correspondent who made the erroneous report; in fact, appellant testified that they had been for years and still were friends. The evidence contains no suggestion of malice on the part of any of respondent's representatives who handled the matter of correcting the report. The following facts appear undisputed: The report of March 9, 1953, was received at the Florence office of Stephenson Finance Company on March 11 or 12; Mr. Hutchinson, the Vice-President, and Mr. MacDowell, the Supervisor, of that company felt that it contained erroneous information, and accordingly Mr. MacDowell thereupon took the report to Mr. Bowick,

the assistant manager of Stephenson Finance Company at Greenwood, and requested him to discuss it with appellant and write to Mr. Hutchinson pointing out the necessary corrections. Mr. Bowick then telephoned appellant, who came to Bowick's office after closing time on the afternoon of March 12, and pointed out that the report was erroneous in that it stated that appellant was indebted to Mr. Ouzts, which was not true. Next morning, the 13th, at about 8:30 o'clock, appellant telephoned respondent's Columbia office, and within an hour thereafter Mr. Crumpton, respondent's Columbia service manager, was in appellant's office for the purpose of correcting the error, and obtained from appellant's bookkeeper the necessary information upon which a corrected report was written on the same day, showing as liabilities accounts payable, $1,600.00, and notes payable $7,663.00, the latter being payable to Stephenson Finance Company on "floor-planned" automobiles. About 2:30 p. m. on the same day, Mr. Crumpton, having returned to Columbia, telephoned both Stephenson Finance Company and the Columbia office of Standard Oil Company and advised that the March 9 report had been found to contain an error and that a new report was being issued to both of these concerns; and thereupon Mr. Crumpton went to the Columbia office of Standard Oil Company and was given the envelope in which the March 9 report had been mailed, and which, as before stated, had not been opened.

Having thoroughly examined the record, we are in agreement with the circuit judge in his ruling that there was no evidence sufficient to carry the issue of malice to the jury.

Affirmed.

Baker, C. J., and Stukes, Taylor and Oxner, JJ., concur.