### 21282

Chester M. TAYLOR, Administrator of the Estate of Russell W. Taylor, Plaintiff-Respondent, v. BRIDGEBUILDERS, INC., Defendant-Appellant, and Virginia R. Elvington and Thomas L. Monahan, as Co-Administrators of the Estate of Edgar Eugene Elvington, Defendants-Respondents.

(269 S. E. (2d) 337)

*C. Dexter Powers,* Florence, and *W. B. Hawkins* and *J. D. McInnis,* both Dillon, *for defendant-appellant.*

*David W. Keller,* Florence, and *A. Glenn Greene,* Latta, *for plaintiff-respondent.*

*Kermit S. King, Dan Shine* and *Sally C. Copeland,* Columbia, and *Hugh L. Willcox, Sr.,* of Florence, *for defendants-respondents.*

Aug. 11, 1980.

Lewis, Chief Justice:

The automobile in which the respondents driver and passenger were riding struck an uncompleted bridge, being constructed by appellant Bridgebuilders, Inc., under a contract with the State Highway Department. Both the driver and passenger were killed. Thereafter, the administrator of the estate of Russell Taylor, the owner-passenger, brought this action against the estate of Edgar Elvington, the driver, and appellant Bridgebuilders, Inc., the bridge contractor, to recover for Taylor's alleged wrongful death. The estate of Elvington, the driver of the vehicle, cross-claimed against Bridgebuilders, for the wrongful death of Elvington. Upon the trial, a jury returned a verdict against Bridgebuilders in the amount of $21,000.00 actual damages for the owner-passenger's estate and $51,000.00 actual damages, for driver's estate. Bridgebuilders has appealed, challenging (1) the sufficiency of the evidence to sustain liability, (2) the exclusion of certain testimony, and (3) the application of Section 15-1-300, 1976 Code of Laws of South Carolina, referred to as the comparative negligence statute. We affirm.

Because the determination of the challenge to the sufficiency of the evidence is dependent on the applicable principles of negligence, we initially consider appellant's contention that the comparative negligence statute, Section 15-1-300, is unconstitutional.

The record indicates that no constitutional objection was raised until the appellant's motion for judgment n. o. v. Since a motion for judgment notwithstanding the verdict relates back to the point in the trial when a motion for a directed verdict was made, it is limited to the previously presented grounds. *Government Employees Ins. Company v. Mackey,* 260 S. C. 306, 195 S. E. 830. This issue is therefore not preserved for consideration on appeal. Accordingly, Section 15-1-300 controls the analysis of the sufficiency of the evidence since it was applicable at the

time this case was tried. See *Stockman v. Marlowe,* 271 S. C. 334, 247 S. E. (2d) 340.

With reference to the contention that the evidence was insufficiency of the evidence since it was applicable at the negligence of the driver and passenger so exceeded its degree of culpability as to bar the respondents from recovery under the provisions of Section 15-1-300. We disagree.

*Section 15-1-300 Contributory negligence shall not bar recovery in motor vehicle accident action.*

In any motor vehicle accident, contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or injury to person or property, if such contributory negligence was equal to or less than the negligence which must be established in order to recover from the party against whom recovery is sought.

We have previously construed application of this provision in *Stockman, supra,* and indicated the legislature intended that the jury evaluate the culpability of each party as compared to that of the other, barring the plaintiff from recovery only if his fault is greater than that of the defendant. With this premise in mind, we review the evidence in the light most favorable to the respondents.

In an effort to upgrade a residential road into a thoroughfare, the Highway Department undertook a project in Florence County to convert Holcombe Road to four lane service and to use a bridge over Jeffrey's Creek to extend it beyond Woodland Street with which it had previously made a "T" intersection. The crossing of the top of the "T" created a loop which could better service heavy traffic. Bridgebuilders, Inc. was hired to construct the bridge.

The highway department, pursuant to Section 56-5-920, South Carolina Code of Laws, 1976, adopted a manual of standards for highway traffic control warning devices to be used during street and highway construction. Additionally, this minimum standard of care was incorporated into the

actual contract under which Bridgebuilders was employed. It is undisputed that despite these requirements for numerous warning devices, the only devices employed by Bridgebuilders were movable barricades from which two signs were displayed. The inadequacy of a barricade warning device is compounded by the fact that the approach to the bridge was complete in all aspects including curbing, sidewalks and lane markings, which was an unusual order of competion according to the president of Bridgebuilders. Therefore, the only indication of nonuse of the highway was the barricade warnings.

At a pre-construction conference, the Highway Department's supervising engineer cautioned Bridgebuilders as to the recurrent vandalism problems and the resulting need for frequent inspection of traffic warning devices. Testimony as to the repeated lack of barricades in the approach lanes to the bridge during the contractor's two week absence from the job site, and the presence of car tracks made at high speed within the barricaded area is abundantly sufficient to warrant the conclusion that there was no proper inspection and maintenance of the barricades. Furthermore, the presence of litter from persons using the area served to further place Bridgebuilders on notice that the highway was being used by the public.

On the night in question, the respondents had been seen about 25 minutes before the collision at a local lounge drinking beer. The driver did not appear to be under the influence, while the owner-passenger did appear to be under some influence, although "not acting drunk." After leaving the lounge, the duo apparently sped down Holcombe Road, through the right hand lane which had no barricade. Shortly thereafter, the pavement ended at the foot of the unfinished bridge. The car was unable to stop, became airborne and struck the concrete foundation support for the eventual floor of the bridge.

There were no eyewitnesses to the accident and expert testimony was used to establish the vehicle's rate of speed.

They estimated the car's speed at 70 to 75 miles per hour at the time of initial braking and 53 to 58 miles per hour at the time of impact. Blood alcohol tests revealed a level of .061 and a .113 percentage for the driver and owner-passenger respectively.

The existence of the completed approaches to the bridge site, without warning of the uncompleted bridge, acted as an invitation to the public to travel the highway, oblivious to the danger ahead. There was ample evidence from which to charge appellant with knowledge of the absence of warning devices at the scene. In view of the magnitude of the danger posed by the uncompleted bridge on a completed roadway and the failure of appellant to adequately warn the travelling public of its presence, we think the degree of culpability of the parties was factual and properly submitted to the jury for determination. We cannot soundly hold, as a matter of law, that respondents would have proceeded to their death, even if adequate warnings had existed, or that their actions in proceeding without warning into the uncompleted bridge constituted a greater degree of negligence than the conscious failure of appellant to warn them of the danger ahead.

Appellant has additionally challenged the trial judge's exclusion of certain testimony relating the speed of the vehicle. The question of its competency need not be determined. It is undisputed that respondents were speeding at the time and the testimony in question was simply cumulative on the issue. Its exclusion was, therefore, not prejudicial. *Crouch v. Cudd,* 158 S. C. 1, 155 S. E. 136.

Judgment is accordingly affirmed.

NESS and HARWELL, JJ., concur.

LITTLEJOHN and GREGORY, JJ., concur and dissent.

LITTLEJOHN, Justice (concurring and dissenting):

I concur in the result reached by the majority opinion insofar as the claim of the passenger is concerned. I dissent

insofar as the claim of the driver is concerned. A treatment of the issues involved requires a more full statement of the facts, as well as an analysis of the applicable law.

This action arose out of a one-car collision which killed two men at approximately 2 o'clock in the morning of December 2, 1976, about two blocks outside the city of Florence. The TransAm Pontiac in which they were riding left the end of a newly-constructed roadway at a high rate of speed and struck a concrete piling of an incomplete bridge. Their bodies were found after sunrise the same morning. There are no living eye-witnesses to the occurrence and much of the evidence presented to the court was circumstantial.

Russell W. Taylor owned, or at least had possession of, the TransAm and was riding in it as a passenger. I will refer to him as the owner-passenger. The vehicle was being driven by Edgar Eugene Elvington, whom I will refer to as the driver. The administrator of the estate of the owner-passenger commenced this action against the driver and against Bridgebuilders, Inc., the company which was constructing the bridge for the State Highway Department. The complaint alleged that his death was proximately caused by the negligence of both the driver and Bridgebuilders. The gist of the negligence allegations against Bridgebuilders is the contention that it failed to provide adequate warnings to the public of a dangerous situation created by the incomplete bridge; as to the driver, the gist of the alleged negligence is that the automobile was operated at a high and dangerous rate of speed while the driver was under the influence of alcohol and his failure to keep a proper lookout and heed the warning signs and barricades placed upon the roadway to notify the traveling public of the incomplete bridge.

The answer of Bridgebuilders asserts a general denial, contributory negligence and joint enterprise.

The answer of the driver's estate was a general denial, sole negligence of Bridgebuilders, contributory negligence and

common purpose of pleasure, which is in effect common enterprise. The driver's estate also cross-claimed against Bridgebuilders, alleging negligence on its part in failing to provide adequate warnings of a dangerous condition at or near the bridge.

Bridgebuilders answered the cross-action with a general denial, alleging sole negligence on the part of the driver and contributory negligence.

At appropriate stages of the trial, the judge denied motions for nonsuit, for directed verdict, and for judgment notwithstanding the verdict. The jury returned a verdict against Bridgebuilders in the amount of $21,000.00, actual damages, for the owner-passenger's estate, and $51,000.00, actual damages, for the driver's estate.

· Bridgebuilders has appealed, alleging that the judge should have ended both claims at one of the stages of the trial by holding that Bridgebuilders was not liable as a matter of law. Certain trial errors are also alleged and Bridgebuilders asserts that the judge erred in applying the comparative negligence statute.

Prior to the street construction project involved, Holcombe Road intersected with Woodland Street, forming a "T" intersection. Both were two-lane streets serving a residential area. In order to construct a loop to serve heavy traffic, the Highway Department undertook a project which converted Holcombe Road into an improved thoroughfare, extending it across the top of the "T", through a swamp, requiring the building of a bridge about 350 feet from the intersection. At the time of the collision on December 2, 1976, Holcombe Road had been widened to approximately 62 feet and was complete, with curbing, down to the bridge site. The nature of Holcombe Road was two-lanes for each direction, with a turning lane in the center; the turning lane was approximately 12 feet wide and was surfaced with rough gravel.

Bridgebuilders was constructing the bridge pursuant to a separate construction contract with the State. At the time

of the collision, Bridgebuilders had installed the foundation supports for the floor of the bridge, but the cement floor had not been poured. It had not performed work on the project for about two weeks prior to the fatalities. On December 2, there were heavy barricades (7' x 10') across the two inner lanes and across the median at the Woodland Street intersection. The outer lanes were not barricaded and were such that vehicles could move in and out, down to the bridge site. At the barricades (350 feet from the bridge site) there were two signs, (1) "Road Closed," and (2) "Bridge Out." The signs were reflective.

As indicated above, Bridgebuilders had not worked at the site for about two weeks. Mr. Ham, Bridgebuilders' project supervisor, testified that four barricades and a "Bridge Out" sign were in place when they left the job site. This testimony was corroborated by Mr. Atkinson, project engineer for the State Highway Department, who testified that a fifth barricade was in position and that all lanes of traffic were blocked. Atkinson also related that he had observed the outside lanes open at various times. The clear inference is that unknown parties had moved the barricades to obtain access to the bridge site.

The trial was held in keeping with the law as set forth in § 15-1-300, *Code of Laws of Sotuh Carolina* (1976); this is referred to as the "Comparative Negligence Statute." It was later declared unconstitutional by this court in *Marley v. Kirby*, 271 S. C. 122, 245 S. E. (2d) 604 (1978). That statute provided:

"In any motor vehicle accident, contributory negligence shall not bar recovery in any action by any person or legal representative to recover damages for negligence resulting in death or in injury to person or property, if such contributory negligence was equal to or less than the negligence which must be established in order to recover from the party against whom recovery is sought."

In *Stockman v. Marlowe,* 271 S. C. 334, 247 S. E. (2d) 340 (1978), we held that cases tried under this statute without contest should not be disturbed because of the court's later ruling. Inasmuch as no constitutional objection was raised in this case until the motion for judgment notwithstanding the verdict was made, I treat the appeal as though the statute were valid.

The intent of the statute, under which the case was tried, was that the culpability of the parties be evaluated and that a plaintiff be denied recovery only if his negligence was greater than that of the defendant. In *Stockman,* this court said:

"The legislature obviously intended that the jury evaluate the culpability of each party as compared to that of the other, barring the plaintiff from recovery only if his fault is greater than that of the defendant"

Many cases are submitted to the jury under the law of comparative negligence which otherwise would be ended as a matter of law by a directed verdict. At the same time, the facts of some cases occasionally warrant the direction of a verdict. When the culpability of the plaintiff is greater than that of the defendant, a directed verdict is in order. *Stockman v. Marlowe, supra.* I would find, as a matter of law, the culpability of the driver was greater than that of Bridgebuilders, while the culpability of the owner-passenger involved issues of fact proper for determination by the jury.

The TransAm, in which the two were riding, went past the barricade and, airborne, into the bridge area where it was stopped by a concrete foundation support for the floor of the bridge. A motor vehicle, described as a TransAm, was seen by Police Officer Gainey at about five minutes before two o'clock (according to his estimate), at an important intersection about one mile from the bridge site. Gainey testified that the vehicle was traveling approximately 70 to 80 miles an hour at the intersection and about 80 to 90 miles an hour as it went out of view, proceeding in the direction of the bridge site. This testimony, offered by Bridgebuilders, was

excluded by the trial judge. This was the only direct evidence of the speed of the TransAm. The owner-passenger presented an expert witness who testified that the car was traveling approximately 70 miles per hour at braking and 53 miles per hour at impact. Bridgebuilders presented an expert who stated the car's speed was approximately 75 miles per hour at braking and 58 miles per hour at impact. We agree with Bridgebuilders that the exclusion was erroneous and prejudicial, especially in light of the fact that there were no other eye-witnesses and the degree of culpability was an important issue. *See State v. Tucker,* S. C. 259 S. E. (2d) 414 (1979). *Also, State v. Cavers,* 236 S. C. 305, 114 S. E. (2d) 401 (1960). While the testimony was erroneously excluded, I think that the error does not require a new trial.

As indicated above, the barricades, the "Road Closed" sign, and the "Bridge Out" sign were at the intersection of Holcombe Road and Woodland Street, which was 350 feet from the edge of the bridge. Skid marks on the roadway indicate that the TransAm went into a skid 188 feet past the intersection and the barricades. There were 162 feet of skid marks to the end of the roadway. At that point, the TransAm flew 38 feet through the air into the concrete bridge support. The patrolman who investigated the collision testified:

"And the vehicle was travelling in the direction toward the bridge which I got indicated as travelling south, went around the barricades and when he got in this area he applied brakes and started skidding sideways and came right cross through the rock median then right in this section here, there was dirt—the pavement end—he had a short section of dirt, skidded through the dirt and went off of the highway and struck the column, the bridge abutments."

Since we are required, under *Stockman,* to evaluate the degree of culpability of the driver, the owner-passenger, and the Bridgebuilders, I review the conduct of each on the negligence issue.

## BRIDGEBUILDERS

One inference to be drawn from the evidence is that Bridgebuilders should have erected immovable barricades across the roadway so as to more adequately assure warning of the dangers created by the unfinished bridge. The use of moveable barricades apparently permitted unknown persons to move them from the two outside lanes. Bridgebuilders also failed to install appropriate warning signals at designated points along Holcombe Road as required by the Standards of Traffic Control and Street and Highway Construction and Maintenance Operation, as set forth in the manual prepared by the South Carolina Highway Department, which governs the operation and conduct of persons undertaking construction projects. The evidence certainly made jury issues as to whether Bridgebuilders was or was not negligent and whether such negligence was a contributing proximate cause of the collision.

## THE DRIVER

The driver was last seen alive at a local lounge about 25 minutes before the collision. He was drinking beer, but a companion, who testified, said that he did not appear to be under the influence of alcohol of any kind. Tests made to determine the amount of alcohol in his blood indicated .061%.[1] There is abundant evidence, to the exclusion of all other reasonable inferences, that the driver operated the TransAm at a speed of 70 miles per hour, or in excess thereof, along a residential street just in and just outside the city of Florence, past a sign limiting speed to 35 miles per hour, and past reflective barricades 7 feet high and 10 feet long, with "Bridge Out" and "Road Closed" signs clearly visible for several hundred feet, and did not apply his brakes until he was 188 feet beyond the barricade and within 162 feet of the bridge site. The driver obviously

---

[1] Under the provisions of § 56-5-2950(b)(2), regarding criminal prosecutions for driving under the influence, the driver's blood alcohol content would not give rise to any presumption that he was or was not under the influence of intoxicants.

grossly exceeded the speed limit, failed to drive at an appropriately reduced speed, failed to keep the vehicle under proper control, failed to maintain a proper lookout, and operated the TransAm with utter disregard for his own safety and the safety of his passenger. To reach the conclusion, as a matter of law, that his conduct was grossly negligent, wanton and reckless, we need not consider the excluded testimony of Officer Gainey.

## THE OWNER-PASSENGER

The evidence reveals that the owner-passenger was drinking beer at a local lounge about 25 minutes before the collision. His companion described his condition as: "He was under some influence of alcohol, but he was not—acting drunk as you would say." Tests made to determine the amount of alcohol in his blood indicated .113%[2]. There is no evidence relative to his actions until later in the morning when he was found dead at the bridge site, in his automobile which had been operated by the other deceased person. Bridgebuilders presents nothing in the record which would warrant the inference that the owner-passenger was or was not negligent or contributorily negligent.

The argument of counsel for Bridgebuilders that its conduct, at most, set the stage and made it possible for the collision to occur has substantial appeal. However, viewing the evidence in the light most favorable to the owner-passenger, I think that a jury issue was created as to his claim. Bridgebuilders has failed to carry the burden of proving that the owner-passenger was contributorily negligent and that such negligence was a proximate cause of the death·

As to the verdict in favor of the driver, I conclude that there was evidence for consideration by the jury that Bridgebuilders was negligent and that such negligence was a contributing proximate cause of the death, but even viewing

2 Under the provisions of § 56-5-2950(b)(3), the owner-passenger's blood alcohol content would give rise to the presumption that he was under the influence of intoxicants.

the evidence. most favorably to the driver I also conclude that he was not only negligent, but was wanton and reckless and his culpability, as a matter of law, exceeded that of Bridgebuilders. This being true, I would hold that the trial judge should have ended this claim upon motion at one of the stages of the trial. In making this determination, I have honored the comparative negligence statute but applied the rule set forth in *Stockman v. Marlowe, supra.*

Under the view I take of both claims, the same result is reached with or without application of the comparative negligence statute.

The verdict in favor of the owner-passenger should be affirmed. The verdict in favor of the driver should be reversed.

GREGORY, J., concurs.