## 23935

James WEIR, Respondent v. CITICORP NATIONAL
SERVICES, INC., Appellant.

(435 S.E. (2d) 864)

Supreme Court

512

*Julianne Farnsworth* and *Rebecca G. Fulmer*, both of Mc-Nair Law Firm, P.A., Columbia, *for appellant.*

*Kenneth R. Young, Jr.* and *Lohman D. Reiter, II*, both of *Young, Young & Reiter*, Sumter, *for respondent.*

Heard May 4, 1993.

Decided Sept. 20, 1993. Reh. Den. Oct. 20, 1993.

MOORE, Justice:

This is a libel action. The jury awarded Respondent James Weir $25,000.00 actual damages and $500,000.00 punitive damages. The trial judge granted a new trial *nisi* remittitur to $275,000.00 as to the punitive damages. We affirm.

## FACTS
In August 1988, Weir, a real estate agent, discussed buying a van with Burdette Motors. Weir signed a motor vehicle sales installment contract and security agreement, a motor vehicle service contract, and a power of attorney all dated August 5, 1988, and a credit application dated August 1, 1988. Burdette Motors subsequently assigned the contract to Appellant Citicorp National Services, Inc. (Citicorp), on August 5, 1988, for $26,420.00. Weir testified he decided not to buy the van prior to taking possession and informed Burdette Motors of his decision.

Citicorp sent Weir a late payment notice in October 1988. In late 1988, Weir became interested in buying a house. On January 5, 1989, Weir signed a contract on the house which in-

cluded an addendum removing the standard financing contingency. Pursuant to the contract, Weir was to obtain a commitment letter for financing before January 15, 1989, with the closing to take place prior to April 1, 1989.

Weir's credit report on January 26, 1989, showed a balance owed to Citicorp which increased the overall debt-to-income ratio. It, however, did not contain any delinquent accounts and Weir's credit was reported as satisfactory. Weir attempted to remove the Citicorp account by writing three letters to Citicorp. On april 20, 1989, a second credit report showed the account with Citicorp delinquent. When Weir was unable to obtain financing, the sellers of the house sued on the real estate contract and were awarded a $16,944.28 judgment. Eventually, in October 1989 Citicorp removed all derogatory remarks from Weir's credit report and labeled the problem with the account "dealer fraud."

Weir brought this libel action against Citicorp seeking actual and punitive damages. The trial judge denied Citicorp's motions for a directed verdict. The jury returned a verdict of $25,000.00 in actual damages and $500,000.00 in punitive damages. Citicorp made motions for a judgment notwithstanding the verdict (JNOV) and a new trial absolute, which were also denied. The trial judge granted Citicorp's motion for a new trial *nisi* remittitur thereby reducing the punitive damage award to $275,00.00. Citicorp appeals.

## ISSUES

1) Did the trial judge err in failing to grant Citicorp's motions for directed verdict and JNOV?

2) Did the trial judge err in failing to admit two letters from Citicorp to Weir?

3) Did the trial judge err in excluding other evidence?

4) Did the trial judge err in not granting Citicorp's motions for a new trial on the ground the verdict was excessive?

5) Does the punitive damages award violate Citicorp's due process rights?

## DISCUSSION

1) Directed verdict and JNOV motions

Citicorp argues the trial judge erred in denying its motions for directed verdict and JNOV based on several grounds. In

reviewing a directed verdict motion, this Court must view the evidence and all reasonable inferences in the light most favorable to the party opposing the motion. *Santee Portland Cement Co. v. Daniel Int. Corp.*, 299 S.C. 269, 384 S.E. (2d) 693 (1989).

First, Citicorp argues the communication was true. The truth of the communication is considered a complete defense. 50 Am. Jur. *Libel And Slander* § 177 (1970). Citicorp argues it reported the debt owed to it based upon the signed sales contract and thus it argues the report was true. Weir contends he did not buy the van and there was not a contract and, therefore, the damaging credit report was false. When the truth of the defamatory communication is in dispute, the issue is a jury question. *Id.*

Second, Citicorp argues it was entitled to the qualified privilege defense. South Carolina has adopted the defense of qualified privilege for a mercantile agency in respect to reports on the credit and financial standing of an individual or business concern communicated confidentially, in the regular course of business, and in good faith to a subscriber having an interest in the particular matter. *Cullum v. Dun & Bradstreet, Inc.*, 228 S.C. 384, 90 S.E. (2d) 370 (1955). In *Thornton v. New South Life Ins. Co.*, 262 S.C. 651, 207 S.E. (2d) 88 (1974), the Court interpreted the *Cullum* holding so as *not* to require proof of actual negligence. The Court held the privilege is qualified and will be lost if the agency acted maliciously or in reckless disregard of its duty to exercise reasonable care to make a fair and accurate report. *Id.*

Citicorp moved for a directed verdict on the ground that Weir had failed to establish malice. At trial, Weir contended Citicorp had failed to exercise its duty to correct the report. Weir introduced evidence that he had contacted Citicorp about the account many times without success. There was sufficient evidence in the record to submit to the jury the issue whether Citicorp acted recklessly or with malice. Therefore, the trial judge did not err in denying Citicorp's motion for a directed verdict.

Third, Citicorp alleges Weir assumed the risk when he entered the real estate contract and deleted the financing contingency. Citicorp argues Weir could not have met the January 15th deadline for the financing commitment

letter because he failed to apply for financing until around January 21st. There was evidence presented at trial, however, that the other party to the real estate contract did not pursue this breach and the damages sued for flowed from Weir failing to close by April 1st which Weir alleged could have been accomplished but for the erroneous credit report. The trial judge did not err in submitting this issue to the jury.

Lastly, Citicorp argues the trial judge erred in failing to grant its motion for JNOV on the ground there was not sufficient evidence to support an award of $25,000 in actual damages. Citicorp contends Weir proved only $16,944.28 in damages and he was not entitled to general damages. Weir offered the judgment for $16,944.28 to prove actual damages. Weir also offered the judgment to prove general damages to his reputation. The trial judge did not err in denying Citicorp's JNOV motion.

2) Letters ruled inadmissible

Citicorp argues the trial judge erred when he held two letters from Citicorp to Weir were inadmissible. Citicorp sought to introduce the letters to show Weir was on notice of the account prior to entering the real estate contract. Weir objected on the ground that the Citicorp employee was not qualified to testify the letters were mailed. The trial held the letters were inadmissible because Weir denied receiving the letters and the Citicorp employee could not testify with personal knowledge that the letters were mailed.

Admissibility of evidence is a matter of discretion and absent an abuse of discretion or an error of law, this Court will not disturb the trial court's ruling. *Hofer v. St. Clair*, 298 S.C. 503, 381 S.E. (2d) 736 (1989). A rebuttable presumption is established upon the evidence of mailing a properly addressed letter. *Foster v. Ford Motor Credit Co.*, 302 S.C. 450, 395 S.E. (2d) 440 (1990). However, this is merely a presumption regarding receipt and does not affect admissibility. The trial judge erred in excluding the letters on this ground.

The authenticity of letters, however, must be established before they may be admitted into evidence. *JKT Co. v. Hardwick*, 274 S.C. 413, 265 S.E. (2d) 510 (1980); *Williams v. Milling-Nelson Motors, Inc.*, 209 S.C. 407, 40 S.E.

(2d) 633 (1946). We find Citicorp failed to adequately proffer the qualifications of its witness to authenticate the letters. Although the basis for the trial judge's ruling may be incorrect, we find the letters were subject to exclusion. A correct decision of the trial court on the wrong ground will be affirmed on appeal. *Moorhead v. First Piedmont Bank & Trust Co.,* 273 S.C. 356, 256 S.E. (2d) 414 (1979). Therefore, we hold the trial judge did not abuse his discretion in excluding the letters.

Furthermore, we do not see how the exclusion of these letters prejudiced Citicorp. *First State Sav. & Loan v. Phelps,* 299 S.C. 441, 385 S.E. (2d) 821 (1989) (to reverse the trial court's exclusion of evidence a party must show both error and prejudice). Weir testified he had notice of the problem he had with the Citicorp account prior to entering the real estate contract. The letters were merely cumulative evidence to establish Weir had notice of the delinquent account with Citicorp. *Taylor v. Bridgebuilders, Inc.,* 275 S.C. 236, 269 S.E. (2d) 337 (1980). Therefore, we hold the exclusion of the letters was not prejudicial error.[1]

3) Other evidentiary rulings

Citicorp contends the trial judge erred in refusing to admit other pieces of evidence. Citicorp sought to introduce evidence of a separate judgment against Weir to show his reputation in the community was already damaged by the previous judgment. The trial judge refused to admit the judgment into evidence because there was evidence the judgment was not entered on the judgment roll. We find no abuse of discretion. *Hofer, supra.*

4) Excessiveness of verdict

Citicorp alleges the trial judge should have granted a new trial absolute because the verdict was grossly excessive. The trial judge granted a new trial *nisi* remittitur thereby reducing the award of punitive damages to

---

[1] The dissent would hold Citicorp was prejudiced by the exclusion. The dissent focuses on Weir's failure to call the Atlanta number contained in the proffered letters to support the conclusion that Citicorp was prejudiced by the exclusion of the letters. Weir's failure to call the Atlanta number supports his contention that he never received the letters which contained the number. Furthermore, most people when calling long distance, if given a choice, would dial a toll-free number.

$275,000.00. If the amount of the verdict is *grossly* inadequate or excessive so as to be the result of passion, caprice, prejudice, or some other influence outside the evidence, the trial judge must grant a new trial absolute. The failure of the trial judge to grant a new trial absolute in this situation amounts to an abuse of discretion and on appeal this Court will grant a new trial absolute. *Mickle v. Blackmon*, 252 S.C. 202, 166 S.E. (2d) 173 (1969); *Zorn v. Crawford*, 252 S.C. 127, 165 S.E. (2d) 640 (1969). We hold the amount of the verdict was not grossly excessive, especially in light of Citicorp's net value.

5) Review of punitive damages

Citicorp contends a separate posttrial hearing is required to review punitive awards. In *Gamble v. Stevenson*, 305 S.C. 104, 406 S.E. (2d) 350 (1991), applying *Pacific Mutual Life Ins. Co. v. Haslip*, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed. (2d) 1 (1991), this Court set forth the rule requiring trial judges to make a posttrial review to determine whether a punitive award withstands constitutional challenge. We decline to interpret *Gamble* to require a separate posttrial hearing.

Citicorp also argues the record does not support the trial judge's findings as to some of the factors. The trial judge set out the factors from *Gamble*. However, he failed to make specific findings of fact for each factor. *Gamble* specifically states the trial court *may* consider the factors. Under *Gamble*, the trial court is not required to make findings of fact for *each* factor. After carefully reviewing the record, we find no error in the trial judge's review of the punitive award. *Johnson v. Hugo's Skateway*, 949 F. (2d) 1338, 1351 (4th Cir. 1991) (citing *Eichenseer v. Reserve Life Ins. Co.*, 934 F. (2d) 1377 (5th Cir. 1991) (finding sufficient evidence in the record to satisfy three of the seven *Haslip* factors and upholding the award)).

Affirmed.

HARWELL, C.J., CHANDLER and FINNEY, JJ., concur.

TOAL, J., dissents in separate opinion.

TOAL, Justice, dissenting:

I respectfully dissent. I would hold the letters were admissible under the Uniform Business Records as Evidence Act

(hereinafter "Act"), S.C. Code Ann. § 19-5-510 (1985).[1] Citicorp was barred from admitting the letters on the grounds that the witness could not testify as to his own personal knowledge that the letters were mailed. There was no objection made based on the failure to lay a foundation under the Act. Nevertheless, as part of Citicorp's proffer, the attorney for Citicorp informed the court that Citicorp's witness would testify as to the procedures for the sending of these letters. I would hold this was adequate proffer to satisfy the Act. *Chandler v. People's National Bank,* 140 S.C. 433, 138 S.E. 888 (1927) (proffer of substance of testimony is adequate).

I also disagree with the majority's determination that Citicorp was not prejudiced by the error. Mr. Weir admitted to having received a letter from Citicorp sometime in October. However, Weir maintained he believed the letter was in reference to a charge card his wife had. The letters Citicorp sought to admit were dated in August and November. They both clearly referred to an automobile loan. Additionally, Weir maintained he repeatedly called Citicorp's toll-free number and was completely frustrated in his attempts to rectify this situation. Although no records of the calls to a toll-free number were in evidence, it is apparent the jury relied on Weir's telephone experiences to support its award of punitive damages. The letters which Citicorp was prevented from admitting, however, do not give a toll-free number but an Atlanta number and address. There is no evidence that Mr. Weir made any calls to the Atlanta number.

The majority maintains that the error was not prejudicial as the letters were cumulative since Weir admitted he had notice of the problem. I agree Weir admitted he received written notification from Citicorp. The majority then inconsistently maintains that the failure to call the Atlanta number was evidence he did not receive these letters. The majority further opines that most people, when calling long distance, if given a

---

[1] This provision provides in part:

A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition or event and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission.

choice, would dial a toll-free number. I disagree. Most people, after being informed they are being held financially responsible for payments on a van they did not own, when given a specific number to call, would call the number given. Especially when, as Weir contends, they received no relief when calling the toll-free number. Accordingly, I would hold the denial of the admission of these letters was prejudicial to Citicorp and warrants a reversal and new trial.